## NATIONAL WATER-WORKS CO. *v.* SCHOOL-DISTRICT No. 7.

*(Circuit Court, W. D. Missouri, W. D.   May, 1882.)*

1. SCHOOL BUILDINGS—CITY SCHOOLS—INCORPORATION OF DISTRICT—CONSTRUCTION OF CONTRACT.

Act Mo. 1877, provides that "any city, town, or village, the plat of which has been filed in the recorder's office of the county in which the same is situate, may, together with the territory which is or may be attached thereto, be organized in a single school-district, and when so organized shall be a body politic." *Held* that, when schools formerly under control of a city are organized under this law, the property in the school buildings does not cease to be in the city, and hence a water-works company, which contracts to furnish water free of charge for "all public buildings and offices of the city," is bound to supply the school buildings; especially so when the contract was made before the schools were so organized.

2. MUNICIPAL CORPORATIONS—CONTRACTS—CONSTRUCTION.

The rule that a court, in construing a doubtful provision of a contract, will follow the interpretation placed upon it by the parties, does not apply to contracts made by a municipal corporation in matters affecting the public interest.

At Law. Action by the National Water-Works Company against School-District No. 7 of Kansas City, to recover compensation for water used in the school buildings. On motion to set aside a nonsuit. Motion denied.

KREKEL, J. The controversy in this case between the water-works company and the school board of Kansas City has its origin in the construction of an ordinance under which the water-works of the city were built, incidentally requiring the ascertainment of the object and policy of that portion of the school laws of Missouri under which public schools in cities, towns, and villages are organized. It appears that in 1873 the city of Kansas entered into a contract with the National Water-

Works Company of New York for the construction of its present water-works, fixing the obligation and liabilities of the parties by an ordinance, the portion of which pertaining to this controversy reads as follows:

"The city may also use and take, and the company is to supply, from the water-works as now constructed and hereafter extended, water for use in all public buildings and offices of the city, and for any fountains the city may erect on the public grounds, and for any drinking places the city may choose to erect in any portion of the city, and for basins for watering stock from waste water out of such fountains. * * * Said company shall not have any pay or compensation for water the city may so use or take, other than the hydrant rent to be paid as by this ordinance is provided."

The question is, do the public school buildings come within the meaning of this ordinance, and are they public buildings of the city of Kansas, and as such to be supplied with water by the water-works company free of charge? The plaintiff claims they are not public buildings, within the contemplation of the ordinance, and that they have not been so regarded; and hence the school board has made a verbal contract with the water-works company by which they agree to pay for the water used by the public schools. In 1873, the time when the water-works ordinance was passed, no school board of any kind existed, and the city, under its corporate authority, had full and complete control over its schools, as may be seen from the provisions of its charter, which are as follows:

"The mayor and councilmen shall have power to sell in fee-simple, lease, regulate, or otherwise dispose of, all lots of ground, and all money and property, to which the inhabitants may be entitled for the benefit of schools, and may take all necessary steps to maintain suits to recover the same, or effect compromises with conflicting claimants, and to appropriate such money or property in such manner as they may consider advantageous to the support of schools."

At the time of contracting for the building of the water-works, nearly all the public school buildings of Kansas City had been erected, and were occupied and used for school purposes. The present defendant corporation had no existence, and the city had entire control over its schools, including the right of property. Under such a state of facts, it would seem that scarcely a doubt could exist as to the school-houses being public property, and within the spirit and meaning of the provisions of the ordinance. But we have the admitted verbal agreement of the present or some former school board with the water-works company to pay for the water used at the public schools. Regarding this verbal agreement, it may be said that the construction given to a doubtful provision by the parties to a contract, and affecting their interest only, often influences courts in their judgment, upon the reasonable presumption that the parties to a judgment are in a condition to best know what was meant or intended by it, and, moreover, likely to guard their interest. The force of such reasoning is broken when we come to apply it to municipal corporations. They must of necessity have their affairs conducted by persons selected according to law, who often have but a

general public interest in the matters intrusted to them, are frequently changed, and not always the best calculated to construe contracts made by their predecessors.    This is illustrated to some extent in the case before the court, in which school directors of one board contracted to pay, and the same or another set of directors afterwards refused payment. A court asked to construe the provisions of a contract under such or similar circumstances may well hold itself free to do so without being influenced by the views entertained or even acted on by the corporators, especially in a case involving public interests, as the present one does.

Passing from the question of construction to the consideration of the nature of the two corporations, the present school board and Kansas City proper, it is contended for the water-works company that they are distinct bodies, each having its own property and exercising control over it, and that, therefore, with no propriety can the public school buildings, the property of the school board, be considered the property of Kansas City within the meaning of the water-works ordinance.    We have already seen that at the time of the passage of the city ordinance contracting for the building of the water-works the city of Kansas owned and had full control of its public schools and property pertaining thereto, and, if any such control and ownership passed from it, it must have been when the present board of school directors was organized, which was long after the passage of the ordinance.    The present school organization of Kansas City was effected under the act of 1877, according to the laws of Missouri on the subject of schools and that part of it regarding schools in cities, towns, and villages.    How did the organization, under this act, affect the public schools of Kansas City, and the title to the property in them, and are the buildings in which they are kept no longer public buildings of the city?    The law in reference to the organization of schools in cities, towns, and villages, to which reference has been made, provides "that any city, town, or village, the plat of which has been previously filed in the recorder's office of the county in which the same is situate, may, together with the territory which is or may be attached thereto, be organized in a single school-district,   *   *   * and when so organized shall be a body politic, and known as school district No. ——— of ——— county."    Although the school-district is designated a county district, yet that no change in the ownership of the property of the schools was thereby intended is indicated by the requirement that a plat of the city, town, or village shall have been recorded, thus identifying the territorial extent of the *quasi* corporation, and making it identical with the city, town, or village which has organized schools under its provisions.    It still more clearly appears that property rights were not affected thereby, for neither the act itself undertakes to transfer the property, nor is there power given therein for the transferring of any title the cities, towns, or villages had to property pertaining to their schools.    If the intention of the law was to have the schools in cities, towns, and villages disconnected from other municipal affairs merely, there existed no necessity for authority to transfer property, and the absence of such a provision is accounted for.    We take it

that the legislature of Missouri, by authorizing district school organizations in cities, towns, and villages, intended nothing more than the separation of the control of the public schools from general municipal affairs. This view is also supported by the provisions of the law intrusting the election of school directors of cities, towns, and villages to their qualified voters, thus completely identifying the school-districts with the corporations upon which they are ingrafted. Regarding the duality of the corporation in this case, it may be further suggested that municipal corporations are the creatures of the legislative will, which uses them for its own purposes and ends. The distribution of municipal affairs among designated bodies is of frequent occurrence, and these *quasi* corporations, as they are called, while acting independently within their assigned limits, are yet subordinate to the main corporation. Thus we understand the Missouri school law. It has authorized the establishment of schools in cities, towns, and villages, and intrusted the management and control of them and their property to separate organizations for convenience and as a matter of policy, and has made them corporations, in this case called "District No. 7." That such a *quasi* corporation was to remain, and continue to be, a part of the main corporation, we cannot doubt.

If may be further argued in support of the views entertained that the grants of land by congress for school purposes of the sixteenth section in each congressional township is to the inhabitants of the township for the use of schools. The grants here referred to are at the basis of the organization of our school system. The special provisions of law regarding cities, towns, and villages found in the Missouri statutes have their origin in grants made by the act of congress of the 13th of June, 1812. Under the succession of ownership of the country by Spain and France, certain grants of lands and lots had been made to towns and villages and their inhabitants, which grants were recognized by the national government after the cession of the territory. In order to settle the title to property granted before the change, congress passed the act of 1812, already referred to, thereby confirming the grants to the inhabitants in the towns and villages named in the act; and such lands as were not rightfully owned were reserved to the inhabitants for the support of schools. St. Louis, one of the villages named in the act, largely profited by the grant of vacant lots, and early organized schools under legislation to that end. Other villages did the same, and thus legislation for their benefit was ingrafted upon the school laws of Missouri, and under modification became, and now are, the laws regarding cities, towns, and villages. Kansas City, as we have seen, organized its schools under this law. It had no special grants of land, but constituted a part of one or more congressional townships, and thus obtained the benefit of the sixteenth section. The enabling act of 1820, authorizing Missouri to become one of the states of the Union, granted to the embryo state, among others, the following lands: "Section number 16 in every township, for the use of the inhabitants of such township for the use of schools." The grant is to the inhabitants of the townships,

be they in a city, town, village, or in the country, without special organization. To the property derived from the source named the citizens of Kansas City generously added, until to-day they possess magnificent school buildings and schools. To the suggestion that the property belongs to School-District No. 7, or the board of school directors, the citizens of Kansas City would readily and truthfully reply, "We are School-District No. 7, and the school board is ours. Neither can deprive us of our property, nor affect its character." To such argument there is no answer; nor is it invalidated by the fact that a fraction of territory outside, but adjoining, the city, may for convenience and its own benefit have connected itself with the school organization of the city, as under the law may be done.

The conclusions reached are that the verbal agreements made by the board of school directors in behalf of School-District No. 7 with the water-works company, to pay for water used for public schools, was without consideration and void; that the public school-houses of Kansas City are public buildings of the city, within the meaning of the water-works ordinance; and that the water-works company is bound to furnish water for their use free of charge, other than provided in the ordinance. Motion to set aside nonsuit denied.