JOSIAH EVANS v. COMMISSIONERS OF CUMBERLAND.

*Counties and County Commissioners—Taxation—Necessary Expenses—Injunction.*

1. The legislature may confer upon a county the power to create debts for necessary expenses, without the approval of "a majority of the qualified voters" in the county. Const., Art. VII, §7. And the county authorities are the sole judges of what are "necessary expenses."

2. Under an act of assembly to enable the people of Cumberland to establish a free bridge over the Cape Fear river, the county authorities were au-

thorized to issue bonds and levy a tax to meet the expenses of the same; *Held,* that a motion for an injunction against the exercise of the power was properly refused.

(*Manly* v. *Raleigh,* 4 Jones' Eq., 370; *Newsom* v. *Earnheart,* 86 N. C., 391; *Hill* v. *Commissioners,* 67 N. C., 367; *Railroad* v. *Commissioners,* 72 N. C., 486; *Brodnax* v. *Groom,* 64 N. C., 244; *Salterthwaite* v. *Commissioners,* 76 N. C., 153; *Cromartie* v. *Commissioners,* 87 N. C., 134; *Winslow* v. *Weith,* 66 N. C., 432, cited and approved).

MOTION for an injunction heard at Fall Term, 1883, of CUM-BERLAND Superior Court, before *McKoy, J.*

The plaintiff appealed from the refusal of the judge to grant the injunction.

*Mr. R. S. Huske,* for plaintiff.
*Mr. Z. B. Newton,* for defendants.

SMITH, C. J.   The general assembly at its last session passed an act ratified and taking effect on March 8th, 1883, entitled "An act to enable the people of Cumberland county to establish a free bridge over the Cape Fear river at or near the town of Fayetteville, North Carolina," the recital of the substance of which is necessary to a proper understanding of the case on appeal.

It directs the county commissioners, on petition from not less than five hundred voters presented on or before the first Monday in April, to submit the question of a free bridge to the qualified voters of the county at an election to be held on the first Thursday in May, and prescribes the manner in which it shall be conducted and the popular will ascertained.

Section five, so far as its provisions relate to the present inquiry, is in these words:

If it shall appear that a majority of the votes cast at such election were for "free bridge," then the said board of county commissioners shall certify the same to the chairman of the board of justices of said county within five days of said meeting, and the chairman of the said board of justices shall call a joint meeting

of the justices and commissioners of said county, to be held on the first Monday in June next following, which meeting shall make or cause to be made such contract or contracts as may be necessary for the speedy establishment of a free bridge across the Cape Fear river at Fayetteville, North Carolina: provided, that if the owners of the Clarendon bridge now across said river will agree to sell their said bridge and franchises, together with the right of way to and from said bridge, over or across any land they may own contiguous thereto, for a sum not to exceed thirty-five thousand dollars, then a purchase of the same shall be made by said board of justices and county commissioners; but if no agreement can be made, they are hereby authorized to make any contract necessary for the erection of a new bridge across said river at or near the town of Fayetteville.

The contract being entered into, the commissioners, if in their opinion deemed best, are empowered to issue coupon county bonds, bearing date January 1st, 1884, in sums not less than twenty-five nor more than five hundred dollars, at a rate of interest not exceeding seven per cent., and to mature at a period not beyond thirty years. The bonds are required not to be sold under par, and the coupons, as they become due, are receivable "in payment of taxes and other claims due to the county of Cumberland." §6.

The next section authorizes and directs the annual levy of special taxes, as long as may be requisite, "sufficient to pay the coupons as they become due" and to provide a "sinking fund" to pay the principal as the bonds mature, not in any one year to exceed the sum of two thousand dollars.

If the commissioners decline to issue bonds, annual special taxes are authorized to be levied and collected, as long as necessary, which shall not in any one year be above "ten cents on the hundred dollars valuation and thirty cents on each taxable poll. §8.

It appears from the complaint and answer, which do not appear to differ in essential particulars, that an election was held on the

day designated in the statute, wherein were cast one thousand six hundred and ninety-six votes for *free bridge*, and one thousand one hundred and forty-two votes for "no free bridge," while the former, which favor the proposition, are conceded not to be a majority of the number of voters in the county.

The result being known, the joint meeting of the commissioners and justices contracted for the purchase of the bridge from the owners at the price of thirty-five thousand dollars, and, after the commissioners concluded to issue the bonds, proceeded to levy the special tax of five cents on each one hundred dollars worth of taxable property and fifteen cents on the poll, half of the amount authorized, to meet the liabilities to be incurred in putting out the bonds.

While preparing and about to issue the bonds, the commissioners were interrupted by the present suit, and a temporary restraining order granted. Upon the subsequent hearing, the prayer for an injunction was denied and therefrom the appeal brings the case before us.

While county and other municipal corporations possess and can exercise only such powers as are conferred, and are under such restraints as are imposed by the constitution and laws enacted pursuant to it, there is no such direct limitation put upon them as is put upon the legislature in reference to contracting a debt or pecuniary obligation in article five, section four of the constitution. The inhibition put upon them is contained in article seven, section seven, which declares that,

"No county, city, town or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same *except for the necessary expenses thereof*, unless by a vote of the majority of the qualified voters therein."

This provision leaves the legislature free to confer upon municipal organizations the power to create debts and issue public securities in order to raise funds to meet those "*necessary expenses*" when it may be deemed expedient, and the legislation may be

made dependent on the result of a popular vote for its efficacy. *Manly* v. *City of Raleigh*, 4 Jones' Eq., 370; *Newsom* v. *Earnheart*, 86 N. C., 39; *Hill* v. *Commissioners of Forsyth*, 67 N. C., 367.

It is only required that an approval be obtained from a "majority of the qualified voters" before contracting a debt, or levying a tax when the fund is for other than the " necessary expenses" of the county or other corporate municipal body. *Railroad* v. *Commissioners of Caldwell*, 72 N. C., 486.

The inquiry then, is whether the construction of a new or the purchase of an existing bridge for the free transit of people over the waters of the *Cape Fear* can be deemed a necessary county expense within the meaning of the exception? and whether the court can undertake to review and correct the judgment of the commissioners if considered erroneous.

The subject is so well considered in the opinion of the late Chief-Justice delivered for the court in *Brodnax* v. *Groom*, 64 N. C., 244, and his comments so forcible, that we prefer to reproduce what he says:

"Who is to decide what are the necessary expenses of the county? The county commissioners to whom are confided the trust of regulating all county matters. *Repairing and building bridges* is a part of the necessary expenses. of a county, as much so as keeping the roads in order or making new roads."

In reference to a judicial control over the exercise of the power delegated to the county authorities in determining what are necessary expenses, he proceeds:

" This court has no power, and is not capable if it had the power, of controlling the exercise of the power conferred by the constitution upon the legislative department of the government or *upon the county authorities*."

" For the exercise of powers conferred by the constitution, the people must rely upon the honesty of the members of the general assembly, and of the persons elected to fill places of trust in the several counties."

COMMISSIONERS *v.* LASH.

The action in this case was to prevent the expenditure of $10,000 in the construction of a bridge where none had been before, connected with no public road, and which was alleged by the plaintiff to be "unnecessary, inconvenient and extravagantly expensive."

The same proposition is again announced in the case of *Satterthwaite* v. *Commissioners of Beaufort County*, 76 N. C., 153, and recognized in *Cromartie* v. *Commissioners*, 87 N. C., 134. The same views as to the exercise of a revisory control of the court, where a tax is levied in excess of the constitutional limit are expressed in an opinion prepared by *Rodman, J.*, in *Winslow* v. *Weith*, 66 N. C., 432, and published in that number of the reports as an appendix. It must be declared there is no error.

No error.                                        Affirmed.