The General Assembly passed an Act, ratified and taking effect on March 8, 1883, entitled, "An act to enable the people of Cumberland county to establish a free bridge over the Cape Fear river at or near the town of Fayetteville, North Carolina," (Laws of 1883, ch. 260). This Act directs the county commissioners, on petition from not less than five hundred voters, presented on or before the first Monday in April, to submit the question of a free bridge to the qualified voters of the county at an election to be held on the first Thursday in May, and prescribes the manner in which it shall be conducted and the popular will ascertained.
Section five, so far as its provisions relate to the present inquiry, is in these words:
"If it shall appear that a majority of the votes cast at such election were for `free bridge,' then the said board of county commissioners shall certify the same to the chairman of the board of justices of said county within five days of said meeting, and the chairman of said board of justice shall call a joint meeting of the justices and commissioners of said county, to be held on the first Monday in June next following, which meeting shall make or cause to be made such contract or contracts as may be necessary for the speedy establishment of a free bridge across the Cape Fear river at Fayetteville, North Carolina; Provided, that *Page 244 
if the owners of the Clarendon bridge, now across said river, will agree to sell their said bridge and franchises, together with the right of way to and from said bridge, over and across any land they may own contiguous thereto, for a sum not to exceed thirty-five thousand dollars, then a purchase of the same shall be made by said board of justices and county commissioners; but if no agreement can be made, they are hereby authorized to make any contract necessary for the erection of a new bridge across such river at or near the town of Fayetteville."
The contract being entered into, the commissioners, if in their opinion deemed best, are empowered to issue coupon county bonds, bearing date January 1, 1884, in sums not less than twenty-five nor more than five hundred dollars, at a rate of interest not exceeding seven per cent., and to mature at a period not beyond thirty years. The bonds are required not to be sold under par, and the coupons, as they become due, are receivable "in payment of taxes and other claims due the county of Cumberland." Sec. 6.
The next section authorizes and directs the annual levy of special taxes, as long as may be requisite, "sufficient to pay the coupons as they become due," and to provide a "sinking fund" to pay the principal as the bonds mature, not in any one year to exceed the sum of two thousand dollars.
If the commissioners decline to issue bonds, annual special taxes are to be levied and collected, as long as necessary, which shall not in any one year be above "ten cents on the hundred dollars' valuation of property and thirty cents on each taxable poll." Section 8.
It appears from the record, that an election was held on the day designated in the statute, wherein were cast 1,696 votes for "free bridge," and 1,142 votes for "no free bridge," but the former, who favor the proposition, are conceded not to be a majority of the number of voters in the county.
At a joint meeting of the justices and commissioners, held in pursuance of the terms of the act, they decided to purchase the *Page 245 
Clarendon bridge, at the price of $35,000, and the commissioners decided to issue bonds, and proceeded to levy a tax of five cents on each hundred dollars worth of taxable property and fifteen cents on the poll.
This action was instituted by the plaintiff in behalf of himself and the other tax-payers of Cumberland county, to enjoin the commissioners from issuing the bonds and also from levying the tax.
His Honor refused to grant an injunction, and the plaintiff appealed.
The facts presented in the present appeal from the refusal of the judge to interpose by a restraining order, and arrest the action of the commissioners in carrying into full effect *Page 249 
the act of March 8, 1883, ch. 260, as well as the matter of law arising thereon, are essentially the same as those considered and disposed of inEvans v. Commissioners, 89 N.C. 154.
The cases referred to in the re-argument and the issues pressed upon our attention have not unsettled our former convictions of the correctness of the conclusions then reached.
But if any disturbing doubts had been produced upon a reexamination of the subject, they are put at rest by the curative and ratifying statute passed at the present session of the General Assembly, supplemental to and amendatory of the former enactment.
This act recites the holding of the election to ascertain the popular will, the issue of the authorized county bonds, the levy of the tax, and then proceeds to declare the bonds, when disposed of at their par value, to be binding, and to direct the collection and payment into the county treasury of the taxes levied. The remaining provisions of the act are intended to facilitate and complete the transaction in the transfer of the bridge, and the last section (6) requires the disposition of the "bridge bonds" to be effected before the 1st day of June, 1885, and unless this be done, repeals the original act and all laws made in pursuance thereof.
There is no error in the ruling and this will be certified.
No error. Affirmed.