W. H. SMITH v. CITY OF GOLDSBORO.

*Mandamus—City Improvements—Streets—Additional Servitude
—Reference—Practice.*

1. The use of a street for laying pipes, &c., in furnishing water, lights, &c., does not impose any additional servitude beyond those reasonably included in the dedication of all streets.

2. Where plaintiff, while owner of lands adjacent to a City, platted and divided the same into ' lots" and "streets" and sold all the lots to purchasers but made no conveyance of the streets, and subsequently the corporate limits of the City were extended so as to include the lands; *Held*, that the plaintiff is entitled to no damages against the City for using the streets to fulfill its duty to the purchasers of the lots in furnishing them water and lights, such use not creating any additional servitude not contemplated by their dedication.

3. Where, in an action, there is a plea in bar, no reference should be ordered until such plea is determined; hence,

4. Where, in an action for damages against a City for the use of streets dedicated by the owner of suburban lands and subsequently included within the corporate limits of the City, the defendant denied the plaintiff's right to any damages, it was error to appoint an arbitrator pursuant to the City charter and ordinances, to assess the damages before the determination of the plea in bar.

ACTION for mandamus by the plaintiff to compel the City of Goldsboro to appoint an arbitrator in pursuance of its charter and ordinances to assess damages claimed by plaintiff for use of his streets, heard before *Robinson, J.*, at CHAMBERS in Goldsboro in September, 1897. From a judgment for plaintiff defendant appealed.

Messrs. *W. C. Monroe* and *Aycock & Daniels*, for plaintiff.
Messrs. *Allen & Dortch*, for defendant (appellant).

DOUGLAS, J.:   This is a proceeding for a mandamus to compel the defendant municipal corporation to appoint an arbitrator, in accordance with its ordinances and charter, to assess the damages claimed by the plaintiff for the additional servitude imposed upon certain streets, the fee of which was alleged to be in the plaintiff.   There seems to have been no question as to the facts, as no issues were submitted or asked to be submitted to the jury.   The Court held as a conclusion of law that the defendant should appoint an arbitrator as prayed in the complaint.   The essential facts appear as follows:

The plaintiff about the year 1881 bought a large body of

land lying East of William street and North of the exten-
sion of Ashe street, which is now situated on what is known
as the extension of Ash street, Daisy street, Parsonage street
and Gardner street; including the land on which said
Daisy street, Parsonage street and Gardner street run, and
including land on which the extension of Ash street runs to
the big ditch, excepting about ⅓ of said street, lying on the
South of said street.   The Eastern limits of the City of
Goldsboro at that time and up to the year 1895 were three
hundred feet from the Eastern limit of William street.   After
the purchase of said land, the plaintiff had the same surveyed
and platted, and in such survey streets were laid off and
clearly defined, and the land adjoining said streets was divid-
ed into lots.   Said lots were offered for sale by the plaintiff as
defined in said survey, and the same were sold and conveyed
by the plaintiff for value to different parties.   All of said lands
described in the complaint have since then been sold off and
conveyed in lots by the plaintiff, except so much thereof as is
embraced in said streets, and, in the deeds conveying the
lots, the streets are designated and called for.   Since the
survey and since the conveyance of the lots, all of the land
has been embraced within the corporate limits of the City,
which provides for its citizens electric lights and water, *as it
is its duty to do*, and the owners of the lots, the grantees of
the plaintiff or purchasers from such grantees, have peti-
tioned the defendant to furnish them water and lights.
Upon consideration of the petition, and being advised that
the conduct of the plaintiff was a dedication of said streets
to the public, the defendant has taken possession of said
streets in order that it may perform its duty to its citizens
and furnish water and lights to the owners of said lots. .

The plaintiff contends that he dedicated the said streets as
"suburban" and not as "urban" ways, and that therefore he
is entitled to compensation for any additional servitude im-
posed upon said streets other than their use as County roads.

We see no merit in this contention, either in law or in fact. It was evidently the intention of the plaintiff, not to open a road for the convenience of the neighborhood, but as stated in his complaint to lay off and open up *streets* for the purpose of giving the purchasers of said *lots* the right of way over the same. In other words, he opened streets to induce parties to purchase the lots, which they would not have done had not the streets been opened. While he may have retained the fee of the streets inasmuch as he did not convey it to any one, he could not have expected any personal benefit therefrom, as he now is not even an abutting owner, as appears from the record. He was fortunate in being able to dispose of all his lots at prices presumably satisfactory to himself. This, which would otherwise have been impossible, he was enabled to do by opening the streets in controversy, and he should not now be heard to assert any ownership in said streets to the injury of the parties whom he thus induced to purchase. The very words "streets" and "lots" indicate the purpose and nature of the dedication. The land was then situated within three hundred feet of the corporate limits of the city of Goldsboro, a growing town, and has since been by it absorbed, as was probably anticipated. One of the plaintiff's streets appears to have been a mere extension of Ash street. The dedication of these streets might have been recalled before any act of acceptance by the city, provided no rights had vested by the sale of lots fronting thereon, or of lots sold by him tributary thereto, as was the case in *State* v. *Fisher*, 117 N. C., 733, but in this case *all* the lots have been sold. The purchasers, buying after the opening of the streets and depending thereon for the enjoyment of their property, were entitled to their unrestricted use for all legitimate purposes, present and prospective. Having been taken within the corporate limits of the city of Goldsboro, they are subject to all the burdens and entitled

121—45

to all the benefits of citizenship. Paying city taxes, they have asked for two of the greatest advantages of the city, water and lights, and this the city was preparing to give them, but for the interference of the plaintiff. Such interference is without warrant in law and cannot be sustained upon any principle of equity.

The expressions "urban" and "suburban ways" are not in general use among our people. We generally say "street" and "road." If A offer to sell a lot to B and tell him that the vacant strip of land in front of it is a street, B knows exactly what is meant and acts accordingly. A cannot be heard to say long years afterwards that by the word "street" he simply meant a "suburban way," and that his vendee B must rest content with the privileges of a countryman, while bearing the burdens of a townsman. The use of a street in furnishing water and light, which add so much to the comfort and convenience of the citizens, does not impose any additional servitude beyond those reasonably included in the dedication of all streets.

As the plaintiff is equitably estopped from denying to his vendees any use of the streets reasonably necessary to the use of the land he sold to them, he is equally estopped from denying to the city the right to furnish to his vendees what is so essentially necessary to their health and comfort or the lawful enjoyment of their property. That he is estopped as to his vendees scarcely needs citation of authority. *Moose* v. *Carson*, 104 N. C., 431, and cases therein cited; *State* v. *Fisher*, 117 N. C., 733; *Grogan* v. *Town of Haywood*, 4 Fed. Rep., 164.

The following quotations from Elliott on Roads and Streets are sustained by numerous authorities on page 12: "A street is a road or public way in a city, town or village." On page 14: "If an owner of land makes a plat of a city or town and refers to streets, he must be taken to mean public

urban ways in all that the term implies. He sets apart, by such an act, the land indicated as a street to all the public uses to which a public urban way may be properly appropriated. The easement thus created is determined by applying to the word "street" the significance usually assigned to it by law. If property in the line of a way designated as a street is acquired on the faith of the owner's act, he will not be permitted, as against the persons so acquiring the property, to defeat by his own act their right to have it regarded as a street with all the usual and appropriate incidents of such a public highway." On page 16: "The right of the public in a street is by no means confined to the surface of the way, and this, all who set apart land for a street are conclusively presumed to know." On page 89: "An owner who makes a plat on which spaces are left indicating the dedication of roads or streets, and sells lots with reference to the plat, can not recall his dedication, for he leaves the streets to be opened by the proper local authorities at such a time as the public interest may require, and of this the local authorities are the judges. It is for them to determine when the public interests demand that the ways as laid out on the plat shall be taken in charge and improved for public use, but the ways as to those who have purchased lots exist from the time of their purchase." On page 15: "It is a familiar rule, illustrated by a great throng of cases, that one who names a street in a deed conveying a town or city lot is held to mean a public urban way." In Mills on Em. Domain, Section 56, the author says: "Streets may be used for pipes, &c., and the original compensation is supposed to cover damages for all such uses, and, in case of a dedication of the street, the owner is presumed to have contemplated such a use." In *Warren* v. *GrandHaven*, 30 Michigan, 28, Judge Cooley says: "The dedication of land to the purposes of a street must be understood as made and accepted with

the expectation that it may be required for other purposes than those of passage and travel merely, and that under the direction and control of the public authorities it is subject to be appropriated to all the uses to which village or city streets are usually devoted, as the wants or convenience of the people may render necessary or important."

In spite of our population we have no large cities and therefore have fewer decisions upon municipal questions than some of the younger and smaller States with greater *centres* of population. Hence, authorities from other juris- dictions on these questions, as well as those relating to gen- eral mercantile and corporation law, are of great interest and value. However, upon other principles of older origin which have long received the earnest attention of the able jurists who have preceded us, and by repeated adjudica- tions, directly or inferentially, have become embodied in the spirit of our laws and the genius of our people, we feel com- pelled to follow our own decisions, except for the gravest reasons. The rapid development of our civilization, with the changes wrought by the increasing and concentrating wealth of the age, and the wonderful discoveries in the arts and sciences, may force upon our attention new principles, or more often the new application of old principles. But, even in such cases, we should endeavor to meet existing con- ditions rather by an expansion or modification of the settled policy of our decisions than by any hasty reversal or total change. Moreover, the decisions of other States are fre- quently so far affected by local statutes as to be of little value to us.

We think his Honor erred in commanding the Board of Aldermen to appoint an arbitrator in view of the defend- ant's plea in bar. If the plaintiff is not entitled to recover at all, and we so hold, what is the use of an arbitrator? We think this comes under the rule of reference under *The*

*Code,* in which it has been repeatedly held that where there is a plea in bar, no reference should be ordered until the plea is finally determined. *Railroad* v. *Morrison,* 82 N. C., 141; *Neal* v. *Becknall,* 85 N. C., 299; *Leak* v. *Covington,* 95 N. C., 193; *Clement* v. *Rogers,* Ibid 250; *Grant* v. *Hughes,* 96 N. C., on p. 191; *Royster* v. *Wright,* 118 N. C., on p. 155.

In one respect this is a case to us of first impression. The plaintiff holds the fee in the naked street without a foot of abutting property. So far from there being any allegation of injury to the abutting owners (a question which we are not now considering) it appears that the action of the city, of which the plaintiff complains, was taken for their benefit and at their request. The judgment of the Court below is reversed.

Reversed.