H. B. MAYO v. COMMISSIONERS OF TOWN OF WASHINGTON.

(Decided March 8th, 1898).

*Injunction—Pleading —Admissions —Practice —Municipal Corporations — Necessary Expenses —Electric Light Plants— Constitutional Law.*

1. Where, in an action to enjoin the erection by a City of an electric light plant, the complaint does not charge that such plant is a necessary municipal expense, an allegation to that effect in the answer is not an admission of such fact, and, even if it should be so considered, it would be an admission of a conclusion of law merely, and not a fact, and would not be binding on the Court.

2. On appeal from an order granting or refusing an injunction, this Court can review the facts.

3. Where a rehearing is granted on one ground but refused on another, the original decision as to the latter is binding as a precedent.

4. Where a town has, by its charter, no express power, it has only such powers as necessarily pertain to or arise from the fact that it is a municipal corporation and can do those things only that are indispensable to its existence and government.

5. To enable a municipal corporation to borrow money or loan its credit for any purpose, except for its necessary expenses, there must be an Act of Assembly passed and ratified, as required by the Constitution, authorizing it to submit the proposition to the people, followed by an actual submission to and ratification by a majority of the qualified voters.

6. The erection and operation of an electric light plant for lighting the streets of a town is not a "necessary expense" within the meaning of Section 7, Art. VII, of the State Constitution.   (CLARK, J., dissents.)

7. A municipal corporation, having general powers only, cannot issue bonds for the erection of an electric light plant for lighting its streets without legislative authority to submit the question to its qualified voters and a ratification by a majority of such voters. (CLARK, J., dissents.)

CIVIL ACTION brought at Fall Term, 1897, of BEAUFORT Superior Court to enjoin the issue of bonds of the town of Washington for the erection of an electric light plant, and heard before *Brown, J.*, at CHAMBERS in Washing-

ton, N. C., on September 4, 1897. His Honor refused the injunction and plaintiff appealed.

No counsel for plaintiff, (appellant).
*Mr. Chas. F. Warren*, for defendant.

FURCHES, J.: The defendant is a municipal corporation containing a population of about 5,000 inhabitants. By its charter it was given the general powers incident to such corporations in the following words: That the commissioners of the town of Washington (naming them) and their successorns in office "be and they are hereby created a corporation and a body politic under the name and title of the Commissioners of the Town of Washington, with full power to make by-laws not inconsistent with the Constitution of the State or of the United States; to contract and be contracted with, to sue and be sued, to plead and be impleaded, by that name and title; and they are hereby invested with all other powers and rights necessary or usually appertaining to municipal corporations." Laws 1846–'47, Chapter 199, Section 1 (Private Laws).

The defendant has undertaken under this corporate power to buy, erect and operate an electric light plant for the purpose of lighting the public streets of the town of Washington at a cost of twenty thousand dollars, and to issue coupon bonds therefor, not to run more than thirty years and not to bear interest at a greater rate than 6 per cent per annum.

The plaintiff, a citizen and tax payer of the defendant town, for himself and in behalf of other citizens and tax payers, denies the right of the defendant to create this bonded debt for the purposes proposed, and thus to burden the citizens and tax payers of the town of Washington.

This action is brought for the purpose of restraining and perpetually enjoining the defendant from creating such debt and from issuing said bonds. Upon the hearing below the court refused to issue the injunction prayed for and the plaintiff appealed.

The appeal was not argued orally in this Court. But we find a signed agreement of counsel asking that it be heard on printed briefs, in which it is stated that the plaintiff's counsel does not wish to file any brief, and has not done so. This is to be regretted, as the appeal involves the consideration of a most important question of constitutional law. But the well considered brief of defendant's counsel treats the case fairly, and contends that there is but one question of law involved, and that is, the constitutionality of the proposed indebtedness and issue of bonds. And that depends upon one question of fact—*is it one of the necessary expenses of the town?*

The defendant contends that the case, as it is constituted in this Court, does not involve the question as to whether the defendant could furnish incandescent lights to its individual citizens for pay, and, if this Court should sustain the order of the Court below, that this question would still remain undecided. This seems to us a little like hedging, as we know of no electric light plant in the State that does not sell incandescent lights to private parties; and we can hardly believe that the defendant would wish to go to this expense in erecting and operating an electric light plant in the town of Washington without this means of defraying a part of the expense of operating the same. But as the defendant contends that it does not involve that question, we will treat it in that way.

We agree with the defendant's counsel that there is

but one question of law involved, and that is the power of the defendant to make the debt and issue the bonds; and this depends upon the fact whether an electric light plant, costing twenty thousand dollars, is one of the necessary expenses of the town government? The defendant contends that it is, and cites several cases as sustaining this contention.

The case of *Tucker* v. *City of Raleigh*, 75 N. C., 267 is cited for two purposes—To prove that electric lights are a necessary expense, and that the admission of this fact by the defendant is binding on the Court. In our opinion it sustains neither contention. In that case, the facts admitted were that the debt sued on was money due for work, performed on the streets, cleaning out wells, and the like. The Court said these facts being admitted, we, as a matter of law, hold that the debt was for necessary expenses. In the case under consideration there is no dispute about facts. They are alleged by the plaintiff and admitted by the defendant, as they were in *Tucker* v. *Raleigh*. And the defendant says in its answer that these facts show, that to buy, establish and operate this electric light plant is one of the *necessary* expenses of its government. The defendant's contention cannot be sustained for two reasons, First, It is not an admission of the defendant that it is a necessary expense, but an *allegation* that it is. It is not alleged by the plaintiff, that it is a necessary expense, and not being alleged it cannot be an admission.

But if the plaintiff had admitted that this debt, if created, would be for a necessary expense, it would be an agreement as to a result, a conclusion, and not a fact, and the Court would not be bound by the admission. But, as this is an application for an injunction, this

Court has the right to review the Court below on the facts. *Jones* v. *Boyd*, 80 N. C., 258.

*Brodnax* v. *Groom*, 64 N. C., 244 is cited by the defendant as sustaining his contention. But in our opinion it does not. The subject of litigation in that case was to enjoin the collection of taxes levied under a special act of the legislature to build and repair bridges. There was no dispute but what the Act authorized the levy, and the only question involved was as to whether it was constitutional or not, as the question was not submitted to a vote of the people. This fact, that it was not submitted to a vote of the people, made the constitutional question hinge upon the question as to whether building and repairing bridges was one of the necessary expenses of the county government, and the Court held that it was. This is the only analogy that *Broadnax* v. *Groom*, bears to the case under consideration. And it is so obvious that the building and repairing bridges on the public highways of a county is a part of the necessary public expense of a county, that we do not propose to discuss this question further.

*Evans* v. *Commissioners*, 89 N. C., 154, is also cited by the defendant. But it is placed entirely on *Broadnax* v. *Groom* and decides no more than that case does.

*Mauldin* v. *City Council*, 33 S. C., 1, is cited by defendant as sustaining its authority to create the debt and issue the bonds. We do not think it does, but that it sustains the contention of the plaintiff. There is no constitutional restriction in South Carolina as there is in North Carolina, and the right of the defendant in that case depended upon its powers under its charter, and the Court held that it had the power. The opinion is made largely of quotations from Judge Dillon, defining general corporate powers. Quoting from Judge Dillon, these

powers are defined as follows: "Those granted in express words ; those necessarily or fairly implied, or incident to the powers expressly granted; those essential to the declared objects and purposes—not simply convenient, but indispensable. Any fair reasonable doubt concerning the existence of power is resolved by the Courts against the corporation. . . . . It is quite certain that such power is not essential to the declared objects and purposes of the corporation, for the city has heretofore been lighted by contract, without owning the gas fixtures." The first part of this quotation down to . . . . was quoted by the South Carolina Court from Judge Dillon, and from there down is a part of the comment of the South Carolina Court. As there was no constitutional restriction of the corporate power in South Carolina, it depended on their general corporate power to contract. They were not restricted as the defendant is. In South Carolina the power of the defendant to lend the credit of the town and to issue bonds was not restricted to the *necessary* expenses of the corporation.

In the charter of the defendant, there are no express powers. It therefore has only such powers as necessarily pertain or arise from the fact that it is a municipal corporation, and, therefore falls under the third division of Judge Dillon's definition, which he says does not mean simply "convenient, but indispensable." And "any fair reasonable doubt concerning the existence of power is resolved by the Courts against the corporation." This case was called to our attention by the defendant as sustaining its position.

*Lott* v. *Mayor*, 84 Ga., 681, is cited by the defendant. This case expressly states that it does not decide any constitutional question. The case bears a very slight

analogy to ours, if it has any at all.   That case is where
the town of Waycross contracted with a company to
furnish it with a certain number of electric lights at an
agreed price per annum.   The action was brought to
enjoin the enforcement of this contract, for the reason
that it was not submitted to a vote of the people.   The
Court held that this did not involve any constitutional
question; that, if the contract was a reasonable one and
the annual rental was kept paid, the constitutional
question might never arise.   There is very little discus-
sion of the case by the Court, and we do not know what
the constitutional provisions of Georgia are.   But the
case no where shows that the question of *necessary* ex-
pense was presented or considered by the Court.

The case of *City of Crawfordville* v. *Broden*, 130 Ind.,
149, is also cited by defendant as sustaining its conten-
tion.   But we do not think it does.   There are no con-
stitutional restrictions in the State of Indiana, as there
are in North Carolina.   The power of the defendant in
that case depended entirely upon the powers contained
in its charter and the case is not put upon the ground
of necessity, but upon the ground of *convenience* and
*benefit*.   But it may be observed that the reasoning of
the Supreme Court of Indiana places the power as to
waterworks and electric plants on the same footing, and
we do not see how they can well be distinguished.

This is a new question in North Carolina so far as the
right of a municipality to establish and operate an electric
light plant is concerned, without submitting the question
to the people for their approval.   But it is not new in
principle.   We have many opinions construing Section
7, Article VII, of the Constitution.   We also have many
opinions defining the powers of municipal corporations.
From these it seems that we ought to be able to arrive

at a proper conclusion as to the law governing this case.

There is no special Act of the Legislature authorizing the levy of a tax, as there was in *Broadnax* v. *Groom.* Nor is there any express power contained in the charter to do so. So, the defendant's right to erect and operate an electric plant and to create a debt and issue bonds, depends upon the general powers vested in the defendant as a municipal corporation.

Every municipality in this State is subject to the provisions of Section 7, Article VII of the Constitution, and it does not matter what powers it has under its charter, if they are in conflict with the provision of the Constitution, they are void. To enable a municipal corporation to borrow money or to loan its credit for any purpose, except for the necessary expenses of the corporation, there must be an Act of Assembly passed and ratified as required by the Constituton authorizing it to submit the proposition to the people. *Bank* v. *Commissioners*, 119 N. C., 214; *Commissioners* v. *Snuggs*, 121 N. C., 394, and the question must then be submitted to and ratified by a majority of qualified voters thereof. It requires both the authority to submit the proposition, and the ratification by a majority of the qualified voters to warrant the creation of the debt and the issue of the bonds. *Railroad* v. *Commissioners*, 116 N. C., 563. If the people want it, why not get it in this Constitutional way?

This brings us to the final consideration of the question as to whether the purchase of an electric light plant for the town of Washington at the price of $20,000, simply to light its streets, is one of the *necessary* expenses pertaining to its government, and it seems to us that the authorities cited by defendant's counsel show that it is not.

We have seen that the power to establish electric light plants and water works plants stand on substantially the same footing. If we consider this to be so (and we are not able to see why they do not) we have at least one direct decision which holds that it is not one of the necessary expenses of a city government. *City of Charlotte* v. *Shepard*, 120 N. C., 411. In the defendant's brief this case is treated as *obiter*. But that is not so. It was claimed on the argument of the case of *Charlotte* v. *Shepard*, that this was one of the necessary expenses of the corporation, and that the plaintiff had the power, without any act of the Legislature or submission of the question to the people, to make this debt and to issue bonds. And this is the second ground of error assigned in the plaintiff's petition for a rehearing. While a rehearing was granted as to the other assignments of error, it was denied as to this ground. This decision was made by a full bench and a unanimous Court, and is entitled to the same weight, as a precedent, that any other opinion of this Court is entitled to.

While we have had no case before this Court as to the power to erect and operate an electric light plant by a municipality, we find that it has been presented in other States, and considered and decided upon the very point involved in this case, that is, whether it is one of the necessary expenses of the corporate government. In *Spaulding* v. *Peabody*, 153 Mass., 129, decided in 1892, we find a very full and satisfactory discussion of the subject. There, the town of Peabody proposed to erect an electric plant at a cost of $30,000, to light the streets, and for other purposes. The Court discussed both aspects of the question, and held that the defendant had no power to incur the expense of erecting such plant for the purpose of lighting streets or for other purposes.

The opinion is delivered by Chief Justice Field and con-
curred in by all the Judges.   In the discussion of the
case the Court say that "it has been uniformly held
that cities and towns are under no obligation to light
their streets for the purpose of making them safe and
convenient for travel," citing *Sparhawk* v. *Salem*, 1
Allen, 30; *Tyson* v. *Booth,* 100 Mass., 258; *Randall* v.
*Railroad,* 106 Mass., 276.   This opinion further says
"that all the power a municipal corporation has to tax
is derived from the Legislature by express grant or nec-
essary implication" and where the Legislature has the
right to grant the necessary powers, the implied powers
are strictly construed."   "That the exceptions to this
rule are few, and being such as a town clock, hay-scales,
pumps, reservoirs, etc.   These obtain by reason of ancient
custom, and are not to be extended."   The opinion fur-
ther states that it was contended "that, if the town of Pea-
body could erect street lamps, it could maintain them by
any appropriate means, and that to furnish them by means
of such electric plant was one of the proper means of do-
ing so."   The rule as laid down by the Massachusetts Court
is "that where there is any considerable amount of
money to be expended, it must be under legislative au-
thority."   This is, as we interpret it, any unusually large
amount for that municipality.   And the Court say that
"it cannot be said that the erection of such works as
are contemplated . . . . in this case, is in any strict
sense necessary in order to enable the town of Peabody
to light its streets."   This case decides the very point
upon which our case turns—that it is not a *necessary*
expense of a corporation to light its streets with electric
lights, and therefore not *necessary* to incur the debt of
$20,000, and to issue the bonds.

To draw the line of demarcation between what are

and what are not *necessary* expenses to be borne by a municipal corporation, would be attended with difficulty. It is not necessary that we should attempt to do so in this case, and we do not attempt to draw the line. There are some things clearly within the line of power, and it is the duty of the corporate authorities to provide for them—such as court houses and jails, as in *Vaughn v. Commissioners*, 117 N. C., 429, or public highways and public bridges, as in *Brodnax* v. *Groom, supra.*

There are others that are clearly outside the line of necessary expenses, such as appropriations to build railroads, cotton factories, to build and operate electric street car lines, etc. These, the municipality would have no right to pledge the faith and credit of a town or city to build, without first obtaining authority from the Legislature, and from the popular vote.

The erection of electric light plants and water works plants may not be so far outside the line of power as some of the things mentioned. But we are of the decided opinion that they are outside.

The claim of power upon the plea of necessity must stop somewhere. The restrictions contained in the Constitution were not intended to be meaningless. If they had not been for a purpose, they would not have been put into the Constitution. In our opinion this provision of the Constitution was wisely put into that instrument for a most beneficent purpose, and it must be judicially sustained and enforced by the courts.

Suppose we hold it to be within the corporate power to buy and operate electric light plants on a pledging of the faith and credit of the town; how long will it be until it will be claimed that electric street cars are *necessary* for the business, progress and convenience of the town? And, if we grant this claim of *necessity*, how

will we resist that? What grounds have we to distinguish one from the other? If we sustain the plea of necessity for street cars, what is there to prevent the same claim of *necessity* to the growth, prosperity and convenience of the people of a town, to which there is no railroad, from pledging the faith and credit of the town to build a railroad? Especially so, if we allow the claim or admission of the corporate authorities to settle the question of necessity, as is claimed that they should do in this case. It is heard every day, in towns of much size, that a street railway is necessary to the growth and prosperity of the town; and, in towns that have no railroad, to hear it said 'that a railroad to this place is a *necessity.*' And it is contended for the defendant in this case that, if such town should make a subscription and issue bonds, or should propose to do so, and when suits should be brought to enjoin it from so doing, if the town alleged it was a *necessary* expense, it is to be taken as conclusive evidence that such street car or railroad is one of the necessary expenses of the municipality, and that the Court is bound by this claim or admission. If this be so, every town in the State would soon have railroads running to it, and a line of electric street cars, based upon the pledged faith and credit of the town. This cannot be the law.

*Smith* v. *Goldsboro*, 121 N. C., 350, was cited for defendant, but it is not in point. The question of establishing electric lights was not involved in that case. The only question involved was the right of the city to use the streets, in a territory lately added to the c ty by extending its corporate boundary. It was to give the same benefits and the same protection to the citizens of the new territory that the citizens of the old territory had.

The Constitution must be observed and enforced.

There is error.   The judgment of the Court below is reversed and the injunction as prayed for must be granted.

Error.

CLARK, J., dissenting:   It would seem that these propositions are established and settled in North Carolina: (1) That it is the duty of the town commissioners to light the town (*Smith* v. *Goldsboro*, 121 N. C., 350) and hence it follows that the cost of such lighting is a necessary expense; (2) That it is "for the courts to determine what class of expenditures fall within the definition of necessary expenses of a municipal corporation", and that when an expenditure falls within that class, the courts "have no authority to control the exercise of the discretionary power vested in the commissioners" either as to the manner of exercising that discretion or the reasonable limit of cost.   *Vaughn* v. *Commissioners*, 117 N. C., 429, citing *Brodnax* v. *Groom*, 64 N. C., 244 and *Satterthwaite* v. *Commissioners*, 76 N. C., 153; *Evans* v. *Commissioners*, 89 N. C., 154; *Cromartie* v. *Commissioners*, 87 N. C., 134; (3.) That for such "necessary expenses" the commissioners are not prohibited by Section 7, Article VII from creating a debt without the approval of a majority of the qualified voters.   *Tucker* v. *Raleigh*, 75 N. C., 267; *Wilson* v. *Charlotte*, 74 N. C., 748.

*The Code*, Section 3800, authorizes town commissioners, *inter alia*, to "lay taxes for *municipal purposes* on all persons, property, privileges and subjects within the corporate limits, which are liable to taxation for State and County purposes," and Section 3821 recognizes that municipal corporations may contract debts for such purposes and provides for their payment.

On August 2, 1897, the commissioners of the town of

122—2

Washington adopted the following order: "Whereas the present method of illuminating the town of Washton by the use of gasoline lamps is entirely inadequate, and does not sufficiently and properly light the said town, and subjects the citizens and others to great inconvenience, as well as to danger and risk, and also involves great expense to the tax-payers of the town, considering the character of the light furnished; and whereas, the population of the said town is now more than five thousand, and is rapidly increasing, and the lack of proper and sufficient lights is detrimental to the business of the town, and an obstacle to its advancement and progress; and whereas, the Board of Commissioners of the town of Washington, after a careful consideration and examination of the different methods and systems of lighting the town, are of the opinion that the best, most effective and cheapest method is an electric light plant, to be purchased, owned and operated by the corporate authorities of the town of Washington, and the said Commissioners declare that the same is a public necessity. Therefore be it

"*Resolved*, That an electric light plant be purchased by the town of Washington for the purpose of illuminating said town, and erected, established and operated therein by the corporate authorities of the said town, at a cost for the purchase and erection of said plant not exceeding twenty thousand dollars. That to pay for the purchase and erection of the said electric light plant, bonds of the town of Washington shall be issued and sold to the best advantage. That the said bonds shall bear a rate of interest not exceeding six per centum per annum, payable annually, or semi-annually, as may be agreed with the purchasers. That the said bonds shall be in denominations of five hundred and one thousand

dollars, and shall run for a period not exceeding thirty years. That the said bonds shall be executed by the Mayor of the town of Washington and countersigned by the Clerk of the Board of Commissioners, and the corporate seal thereto affixed."

This was an action by a tax payer to restrain the creation of this debt and the issuance of the bonds. The Judge below, himself a citizen of the town of Washington, and acquainted with its needs, refused the injunction, and the plaintiff appealed.

There is no statute specifically granting to the defendant the power to purchase and operate an electric light plant, and issue bonds therefor, and the proposition to purchase said plant and issue bonds has never been submitted to a vote of the qualified electors of said town.

The Constitution, Article VII, Section 7, provides: "No county, city, town, or other municipal corporation, shall contract any debt, pledge its faith, or loan its credit, nor shall any tax be levied or collected by any of the officers of the same, *except for the necessary expenses thereof*, unless by a vote of the majority of the qualified voters therein."

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the declared objects and purposes of the corporation—not simply convenient, but indispensable." Dillon Mun. Corp., Sec. 89 (4th Ed.) As the proposition to contract this debt has never been submitted to a vote of the qualified electors of the town and there is no specific grant of power to contract it,

the question arises, is it for a "necessary expense" of the town within the meaning of the Constitution, Article VII, Section 7. This is the sole question to be decided. The power of the commissioners of the town to manufacture gas or electricity, to sell the same to the citizens, is not presented in the case and does not arise upon the facts. The resolution adopted by the defendant recites that "the present method of illuminating the town of Washington by the use of gasoline lamps is entirely inadequate, and does not sufficiently and properly light the said town, and subjects the citizens and others to great inconvenience, as well as to danger and risk, and also involves great expense to the taxpayers of the town, considering the character of the light furnished." It further recites that "after a careful consideration and examination of the different methods and systems of *lighting the town*, the commissioners are of the opinion that the best, most effective and cheapest method is an electric plant to be purchased, owned and operated by the corporate authorities of the town of Washington." The defendants then resolved, "That an electric light plant be purchased by the town of Washington *for the purpose of illuminating the said town.*" The question presented is the power of the defendants to contract a debt to purchase an electric light plant for the purpose of lighting public buildings and streets of the said town—a strictly public purpose.

Article VII, Section 7, of the Constitution in reference to the power of counties to contract debt, pledge faith, loan credit, or levy and collect taxes for "necessary expenses" has been frequently construed by this Court. There would seem to be no distinction between counties and towns, as the section of the Constitution applies to both alike. There would be a difference as to what

would be "necessary expenses" of each, due to the different purposes and objects for which the two classes of corporations are created.

Repairing and building bridges are necessary expenses of a county. *Brodnax* v. *Groom*, 64 N. C., 244; *Satterthwaite* v. *Commissioners of Beaufort County*, 76 N. C., 153; *Evans* v. *Commissioners, supra; McKethan* v. *Commissioners*, 92 N. C., 243. Building a court house is a necessary expense. *Halcombe* v. *Commissioners*, 89 N. C., 346; *Vaughan* v. *Commissioners*, 117 N. C., 429. In *Smith* v. *Newbern*, 70 N. C., 14, in the able opinion of Bynum, J., it is held, citing *Milne* v. *Davidson*, 5 La., 410, that the city may without express statute erect public hospitals, and, citing *Livingston* v. *Pippen*, 31 Ala., 542, and *Rorie* v. *Cabot*, 28 Ga., 50, bore an artesian well. In *McLin* v. *Newbern*, 70 N. C., 12, it is held that the town has inherent power, or by reasonable implication from its general power, to build a jail or guard house as a public necessity. In *Wilson* v. *Charlotte, supra*, Rodman, J., says "It would be difficult or impossible to draw a precise line between what are and what are not the necessary expenses of a city." He likens it roughly to the inquiry as to what are the necessaries which may be charged against an infant, a question whose determination largely depends upon his means, condition in life and surroundings. While the analogy is not exact, it is sufficiently so.

Nothing can be more conducive to the comfort, convenience and safety of the dwellers in cities and towns than well-lighted streets, market halls and other public buildings, or more effective to prevent or detect vice and crime. If it be conceded that it is the duty of a city or town to light its streets and public buildings at all, then why not provide the best method of illumination it can

afford.   If the defendants could light the town with
kerosene lamps or with gasoline and pay the expenses
from its taxes, then why could they not provide better
light by the use of gas or electricity?   It would be
merely a difference in the quality of the light furnished,
a difference in degree and not in principle.   In *Raleigh
Gas Light Co.* v. *The City of Raleigh,* 75 N. C., 274,
it was assumed without argument that the purchase of
gas for public purposes by the city was a necessary ex-
pense, and that the city was bound to pay a debt con-
tracted therefor.   "So far as lighting streets, alleys,
and public places of a municipal corporation is con-
cerned, we think that, independently of any statutory
power, the municipal authorities have inherent power
to provide for lighting them.   If so, unless their discre-
tion is controlled by some express statutory restriction,
they may, in their discretion, provide that form of light
which is best suited to the wants and the financial con-
dition of the corporation.   The Court further says, that,
the municipal authorities thus possessing the power to
light the streets, the power to furnish or procure elec-
tricity is carried with the principal power as an auxil-
iliary."   Croswell's Law on Electricity, Section 190,
citing *Crawfordsville* v. *Braden,* 130 Ind., 149; *Maul-
din* v. *Greenville,* 33 S. C., 1; *Lott* v. *Waycross,* 84
Ga., 681.

   There can be no doubt that the power to light the
streets and public places of a city is one of its implied
and inherent powers, as being necessary to properly pro-
tect the lives and property of its inhabitants and as a
check upon immorality.   This is forcibly set forth by
Judge Dillon in his work on Municipal Corporations, as
follows:   "In a most important particular, however,
Rome suffers by comparison with modern cities.   Its

public places were *not lighted*. All business closed with day light. The streets at night were dangerous. Property was insecure. No attempt at public illumination was made. The idea does not seem to have occurred to them. Persons who ventured abroad on dark nights were dimly lighted by lanterns and torches . . . No more forcible illustration of the necessity and advantages of lighting a city can be given than the pictures drawn by Lanciani and Macauley, of the state of a great city buried in the darkness of night; and they show how clearly the power to provide for this is *essentially* and *peculiarly* one pertaining to municipal rule and regulation. Nor are these studies, and the facts that they reveal, without practical value to the jurist. They demonstrate that a large and dense collection of human beings occupying a limited area have needs peculiar to themselves, which create the necessity for municipal or local government and regulation, and this, in its turn, the necessity for corporate organization. The body thus organized, as it has duties, so it acquires rights peculiar to itself as distinguished from the nation or State at large." *Dillon, supra* (4th Ed.) Section 3a.

Upon this paragraph the Supreme Court of Indiana in *Crawfordsville* v. *Braden*, 130 Ind. at p. 157 (14 L. R. A. 268) says: "While Judge Dillon's remarks have of course special reference to great cities, the difference in that respect between the greater and minor municipal corporations is a difference in degree and not in kind. Wherever men herd together in villages, towns or cities, will be found more or less of the lawless or vicious; and crime and vice are plants which flourish best in the darkness. So far as lighting the streets, alleys and public places of a municipal corporation is concerned, independently of any statutory power, the

municipal authorities have inherent power to provide for lighting them. If so, unless their discretion is controlled by some express statutory restriction, they may in their discretion provide that form of light which is best suited to the wants and financial condition of the corporation." "It is well settled that the discretion of municipal corporations within the sphere of their powers is not subject to judicial control, except in cases where fraud is shown, or where the power or discretion is being grossly abused to the oppression of the citizen (citing *Valparaiso* v. *Gardner*, 97 Ind., 1, 15 Am. & Eng. Enc. 1040). We can see no good reason why they may not also, without statutory authority, provide and maintain the necessary plant to generate and supply the electricity required. Possessing authority to do the lighting, that power carries with it incidentally the further power to procure or furnish whatever is necessary for the production and dissemination of the light. The only authority cited which holds a contrary doctrine is *Spaulding* v. *Inhabitants*, 153 Mass., 129. We are however unable to recognize the validity of the reasoning in that case. We are unable to see the analogy between the City of Boston, because authorized to light its streets, engaging in whale fishing to procure oil for that purpose or the other supposed cases, and the generation and supply of electricity. Electricity is not a commodity which can be bought in the markets and transported from place to place like oil."

To the same purport of this able opinion are many others, among them, *Linn* v. *Chambersburg*, 160 Pa., 511, 25 L. R. A. 217 (in which it is said that "it is a mistake to assume that municipal corporations should not keep abreast with the progress and improvements of the age"); *Jacksonville Electric Light Co.* v. *Jack-*

*sonville, Fla.*, 30 L. R. A., 540; *State ex rel. Atty. Genl.* v. *Toledo*, 48 Ohio St. 112, 11 L. R. A. 729; *Hequemburg* v. *Dunkirk*, 49 Hun. 550; *Smith* v. *Nashville*, 88 Tenn., 464; *Mitchell* v. *Negaunee* (Mich) 71 N. W., Rep. 646; *Publishing Co. Asso.* v. *The Mayor*, 152 N. Y., 257. In some of these cases there was an Act of the Legislature authorizing the purchase or erection of the electric plant, and the last is noteworthy as sustaining an Act authorizing the city to construct a street railroad at its own expense, but all of them are in point as recognizing that these purposes are "city purposes," and within the scope of duties for which cities and towns are incorporated.

In this Court at last term it was said by a unanimous Court in *Smith* v. *Goldsboro*, 121 N. C., 350, at page 352, that "The City provides for its citizens electric lights and water, *as it is its duty to do* . . . . ; the defendant has taken possession of said streets in order that it may perform its duty to its citizens and furnish water and lights to the owners of said lots." And at bottom of p. 353, it is said that "having been taken within the corporate limits of the city of Goldsboro, they are subject to all the burdens and entitled to all the benefits of citizenship. Paying city taxes, they have asked for two of the greatest advantages of the city, water and lights, and this the city was preparing to give them but for the interference of the plaintiff. Such interference is without warrant in law and cannot be sustained upon any principle of equity." This decision is abreast of the times and is simply a recognition of the fact that cities and towns are not incorporated for the primary purposes of government, the protection of person and property, since that could be done by the Justices of the Peace and Constables, as in the

country districts, without the expensive machinery of municipal government, but municipalities are in fact not so much for governmental purposes as for business needs, such as paving, lights, security against fire, water, sewerage, and the like, which are the necessities of a dense population, and which can be furnished more cheaply and effectively by the representatives of the municipality chosen to administer its common interests, than by subjecting each citizen to the unrestricted demands of organizations of private capital. Lighting being one of those necessities, whether the town shall furnish kerosene, gasoline, gas or electric lights, and if either of the latter, whether it shall procure the lights by paying exorbitant prices to combinations of private capital, or shall procure them at about one third the cost (as is common knowledge) by the city owning and operating the plants, are matters which must be left to the discretion of the local legislature elected by the people of the municipality for these very purposes, for the small criminal jurisdiction vested in the Mayor as to the violation of town ordinances is purely incidental. In *Brodnax* v. *Groom*, 64 N. C., 244, Pearson, C. J., said that the discretion of local commissioners over expenditures within the range of what are necessary expenses, could not be supervised by this Court without "erecting a despotism of five men." The same is held in *Wilson* v. *Charlotte*, 74 N. C., 748, at bottom of p. 759 and reaffirmed in *Satterthwaite* v. *Beaufort*, 76 N. C., 153. While electric lighting might not have been a necessity years ago, it has become so by general adoption, to-day, and while it would not be a necessity for a smaller, poorer and less progressive town, even to-day, it may be indispensable for a larger and wealthier town rapidly increasing in population, and the local board of

commissioners may be entrusted with passing upon that question; and when, as here, their finding that electric lighting is a necessity is not gainsaid in the pleadings, this Court cannot as a matter of law reverse the judgment below, and hold that it is not a necessity.

In *Charlotte* v. *Shepard*, 120 N. C., 411, there is a a dictum, (since it was not necessary to the decision of the case), that "the furnishing water to the people of a city is not in itself a necessary expense in the sense that the city must own and operate a system of water works," but there is a wide distinction between that case and this in two essentials at least: there was no finding of the commissioners, acquiesced in by the other party, that as a matter of fact it was a necessity that the city should own water works, and secondly, the reference in that case was to the city's owning water works for the purpose of "furnishing water to the people" i. e. to individuals, whereas in the present case the commissioners are establishing the electric plant for the city itself to light its streets, public buildings and squares, as they are compelled to do. There is no question of furnishing lights to the people as individuals, though if the city plant is established for city purposes, we know of nothing which will forbid its furnishing private citizens. But water works are comparatively little used by the city as a corporation except for protection against fire, and it is principally for the purpose of furnishing water to individuals at a moderate rate that municipalites own their own waterworks, and it may be argued, therefore, that water works, unlike lighting, are not a necessity, and hence cannot be established until the question of incurring a debt therefor is submitted to the people.

It would seem, however, that city ownership of water

as well as lighting-plants is a matter vested in the discretion of the city government. Light and water, sewerage and sanitation, paving and fire protection are necessities, and are the chief objects to be obtained by municipal organization. Transportation is not necessary, but the right to own and operate street car lines can be conferred on municipalities by legislative action.

There is an unmistakable trend the world over towards municipal ownership of lighting, water works, and even (to some extent) street railways. Judge Dillon refers to this, and intimates that it is commended by wisdom and sound policy. 2 Dillon, *supra*, Section 691, note 1. In Germany, two thirds of the cities own their electric lighting and car plants, and the proportion is increasing. The same is true of the other countries of continental Europe, there being a great increase in municipal ownership since Judge Dillon wrote. In Great Britain and Ireland, 203 cities and towns, being in fact every city of any importance, save five, own their lighting plants not only for their own corporate uses but for furnishing light to citizens, and the average price of gas furnished to the citizen, with a profit too to the municipalities, is 54 cents per thousand. In this country too, a large number of cities own their gas plants. Our neighboring capital, Richmond, Va., which is one of them, has owned its gas plant since 1852, and furnishes gas at $1.00 per thousand, and shows a large annual profit. A large and increasing number of cities and towns (already over 200) in the United States own their electric lighting plants with the result that the cost to the municipalities, from official reports, is less than one third of the average cost in cities buying their lights from private companies.

The number of cities in this country owning their

water works is 1690 (over one half) out of a total of 3196 having water supply and municipal ownership is steadily increasing. In the 50 largest cities in the Union, 19 have recently changed from private ownership to municipal ownership, leaving only 9 of the 50 which are still dependent for their water supply upon private companies. At the beginning of this century, only 17 towns in the United States were supplied by water works, and only one of them owned its water works plant. In Great Britain one third of the street railways (two thirds excluding London) are owned by the cities themselves, with the result of lower rates and better accommodations as well as a profit to the municipalities, which have thus been enabled to lower taxation. On the continent of Europe, wherever a city does not own its street railways, they are under city control, which fixes their rates, especially requiring a minimun rate (usually 1 cent or 2 cents at most) to be charged the working classes going to and from work, and a division of profits with the city.

New York is among the cities which own the ferries though at present it leases them out. Thus the concept of a municipality is scarcely governmental at all, except incidentally for the enforcement of its ordinances, but it is in truth a great business agency to supply its people with the prime necessities of a crowded population, light, water, sanitation, clean and well paved streets, and protection against fire.

Indeed, one of the most fruitful causes of inequality of condition and the creation of a few enormous wealthy men at the expense of the general public, has been the great profits made by private ownership of the public franchises of furnishing light, water and transportation to large bodies of men, incorporated into cities and

towns.    Judge Dillon, *supra*, cites other countries in which light and water are furnished, either altogether, or in a majority of cases by the municipalities.    The general movement of the age in which we live is towards the ownership and operation of these franchises by the people of towns and cities for themselves through the agency of their municipal corporations, as one of the recognized and chief purposes of town and city charters.

The point immediately before us, however, is far short of that, and is fully sustained by the authorities above cited, to-wit, that the lighting of streets and public squares and buildings is a necessary expense, and that to procure such lighting the town commissioners, by reasonable implication from their general powers, and without express statutory enactment or popular vote, have a right to establish an electric light plant, just as they can build a guard house, buy a fire engine, erect a public hospital or bore an artesian well.    It would be otherwise of course if the corporation undertook to operate a cotton factory or some other enterprise not within the scope of its recognized duty, as lighting the town is universally held to be.