## CARLYLE WATER, LIGHT & POWER COMPANY
### v.
### CITY OF CARLYLE.

*Municipal Corporations—Contract—Ultra Vires—Water Company—Unsatisfactory Test—Indebtedness—Constitutional Limit—Monopoly—Propositions of Law—Practice Act, Sec. 42—Evidence—Instructions.*

1. A city reserving only the right to dictate to a water company as to the source of supply, can not do so as to the location of a standpipe.

2. Propositions of law, to be held or refused by a court sitting without a jury, must be presented before verdict.

3. Upon the proposition that a contract, giving a water company the exclusive right to supply for twenty-one years, was *ultra vires* as interfering with the legislative power of the city, this court holds that the same should not be held void for such reason, but simply voidable so far as it is executory.

4. In an action brought to recover on a contract between a municipal corporation and a water company, it is *held*: That there is no merit in the plea that the indebtedness created by the contract exceeded the constitutional limit, the amount being figured on the assumption that the rental of hydrants for twenty-one years was a present indebtedness; that no appropriation was necessary on the part of the municipality, at the time of or before entering into the contract; and that but one test of a series of four hydrants could be required.

[Opinion filed March 14, 1889.]

APPEAL from the Circuit Court of Clinton County; the Hon. AMOS WATTS, Judge, presiding.

Messrs. MURRAY, VAN HOOREBEKE & FORD, for appellant.

326    APPELLATE COURTS OF ILLINOIS.

VOL. 31.]    Carlyle Water, Light & Power Co. v. City of Carlyle.

The proper location of everything except the standpipe is expressly admitted. The ordinance requires that a majority of the aldermen approve of the location, and two witnesses swear they did so approve, and though all the aldermen were sworn and testify, there are none who gainsay the statement. The mayor says it was not approved by the council in open session, which is not a requirement of the ordinance. That the location is no way objectionable is shown by the fact that no complaint has been made, and the city council ordered the test of the works without objection, and this observation applies with equal force to the objection attempted to be raised as to the boilers.

The evidence abundantly proves that within the time specified in the ordinance, or at least within the further time allowed by defendant, the contracting company and plaintiff, as its assignee, erected, at the places designated in the ordinance, a complete system of waterworks, of sufficient capacity to furnish at all times all the water necessary or demanded for the use of the defendant and of its inhabitants in accordance with the ordinance contract, and that afterward, and upon the 16th day of September, 1887, the plaintiff, by test through such system, did throw simultaneously through 100 feet of 2½-inch rubber hose and 1-inch ring nozzle, four streams of water at least 60 feet high by standpipe pressure, and at least 80 feet high by direct pressure of its pump, from four of its hydrants theretofore selected by the defendant's city council in open session, for the express purpose of making the test provided by the 9th section of the ordinance, and that thereafter plaintiff has kept said system in complete running order, and has supplied the defendant and its inhabitants with all the water required by the ordinance, and in all things kept and fulfilled every act and thing required of the plaintiff by the ordinance, and that the water is pure and wholesome.

Granting that we have proved all things, the test included, as set forth in the declaration, it will be argued, as was held by the trial court, that the defendant had the right to demand a reasonable number of the hydrants be tested, and was entitled of right by the terms of this contract to require plaintiff

to make the test on the Franklin street ma'n on the 17th day of September, being the next day after the successful test from the hydrants actually designated by the council in open meeting, and that plaintiff, the second day, failed to make the test successfully, and that the making of a successful test from these four hydrants, all situate on a main whose west end is dead, was a condition precedent to the right of plaintiff to recover. We deny this. The main extends from east to west on Franklin street, and it is not claimed that it is fed at its west end. It has but two ends—an east end and a west end; its east end is fed, its west end is not fed.

As a prime condition of any test the ordinance (latter clause section 9) provides that at least two of the hydrants to be tested shall be located on a main fed from both ends. The four hydrants here are all on a main the west end of which is not fed, but is dead, and therefore it was not in the power of the city to designate these hydrants for test.

Again, the language is that the test shall be made from any four hydrants designated by the city council, two of which shall be on a main fed from both ends; and this designation was made by said council on the 14th day of September, 1887, to be tested on the 16th, and the designated hydrants were then and there on the said 16th so tested, and the test filled the requirements; so testifies the mayor, so testifies every alderman and all other witnesses who speak to the point, and so the city council entered upon its records. We insist the city council, having made its selection on the 14th, and made the test on the 16th, pursuant to such designation, the plaintiff succeeding in this test, and having in all other respects fulfilled its contract, nothing remained for the defendant but to accept forty-three hydrants and to pay for their use as it agreed to do.

This must have been the view taken by the city authorities, for the next day (the 17th of September) they filed the ordinance, levying a tax expressly to pay for the use of these works with the county clerk, and have caused the tax to be extended on the tax books. It has been paid, every dollar, and is now in the city treasury.

328    APPELLATE COURTS OF ILLINOIS.

VOL. 31.]    Carlyle Water, Light & Power Co. v. City of Carlyle.

There is no warrant in this ordinance for more than one designation of hydrants, nor for test of any hydrants other than those once designated. The power to designate the hydrants from which the test should be made was exhausted the instant it was exercised.

Messrs. E. B. GREEN and G. J. McGAFFIGAN, for appellee.

From section 42 of the chapter on practice, for the submission of written propositions of law to be *held*, *refused* or *modified* within such time as the court may require, it is obvious that the time to be fixed by the court, within which they shall be presented or submitted is some time before the decision of the questions involved and the rendition of the judgment. If the court is to instruct itself upon the law of the case it is all-important that such instructions should be given before the court passes upon the questions and renders a verdict. In this case the propositions of law were submitted three days after the rendition of the judgment, and counsel had not asked the court to fix a time within which to submit their propositions of law. The record shows that appellee's propositions of law were submitted and passed upon by the court on the trial of the case, and some were *held* by the court and some were *refused*.

An examination of the propositions of law submitted by appellant's counsel will disclose the fact that appellant has all advantage in this court of the questions of law raised by those propositions, that he could have, had all these propositions submitted been *refused*. It is said they are the antitheses of the propositions of law submitted by appellee and *held* by the court; if so, the same questions are embraced in appellant's fourth assignment of error, and can be considered by this court on this appeal. In any view that can be taken of the action of the court in refusing to consider appellant's propositions of law, no such error was committed as has deprived appellant of any right, and the judgment should not be reversed for that reason.

The submission of propositions of law is unlike a motion for a new trial in this, that motion for a new trial may be

made at any time during the term, for the statute so expressly provides; but there is no such provision as to the submission of propositions of law; and when, as in this case, counsel failed, or neglected, on the trial, to submit their propositions of law, or to ask the court to fix a time within which they could do so, they have no reason to complain of the action of the court in refusing to consider them.

Phillips, J. The city of Carlyle, in the latter part of 1886, desiring to provide a system of water-works, entered into a contract with the Water, Light and Power Company of St. Louis, Mo., for the construction of the same, which contract was by ordinance of the city of Carlyle duly enacted, as follows:

Ordinance No. 8.

Entitled, an ordinance to provide for a supply of water for fire protection and for use of the inhabitants of the city of Carlyle, as follows:

Section 1. The Water, Light and Power Company, St. Louis, Mo., a duly incorporated company, its successors and assigns, for and in consideration of the obligation hereinafter imposed upon it by this ordinance, is hereby authorized to use the streets and alleys and other public ways and grounds of the present and future limits of the city of Carlyle, for the purpose of laying down pipes for the conveyance of water in and through said city, for the use of said city and its inhabitants.

Sec. 2. And said company, its successors and assigns, shall have the exclusive privilege of laying down pipes for conveying water in said city for the use of said city and its inhabitants, for the term of twenty-one years from the date of the passage of this ordinance; provided, that the said company, its successors or assigns, shall, within thirty days from the approval of this franchise, establish the best and most suitable place within or near the eastern boundaries of this city for the source of water supply, which shall be submitted to, and approved by a majority of the city council, and have said works completed and in successful operation within nine months of such location, and shall keep and maintain such

330    APPELLATE COURTS OF ILLINOIS.

VOL. 31.]    Carlyle Water, Light & Power Co. v. City of Carlyle.

system of water-works, with all future additions and extensions, in successful operation thereafter during the term of this franchise; unavoidable accidents or delays, consistent with ordinary precaution, only excepted.

SEC. 3.    That said company, its successors or assigns, shall erect within or near the corporate limits of this city a complete system of water-works, of sufficient capacity to furnish at all times all the water necessary for the use of said city and its inhabitants, and shall at all times make all additions and extensions necessitated by the increased demand of said city.

SEC. 4.    That said company, its successors or assigns, shall, at the place to be established, as provided in section 2 of this ordinance, erect the necessary and substantial buildings and appliances for such system of water-works, and shall erect and put up a tank of boiler iron one hundred and fifteen feet high, from ten feet below the level of the court house square, which shall have a capacity of not less than fifty thousand gallons, or, at the option of the company, an elevated boiler iron tank, holding 50,000 gallons, the top of which shall be of same height mentioned.

There shall be two supply pumps, of the Blake, Worthington or Deene patent or manufacture, of best and latest construction, capable of furnishing one million gallons of water per day of twenty-four hours. Two steel boilers, of best construction, and so arranged and built that they may be fired and used separately or together, and each to be of sufficient power to run both pumps at the same time with easy firing, and provide everything necessary and desirable for a complete and successful plant of water supply, and to secure the necessary supply of pure and wholesome water from the Kaskaskia river, above city sewerage, and to prepare wells and reservoirs necessary for the proper filtering of such water.

SEC. 5.    Starting from these works the said company, its successors or assigns, shall lay down and maintain a complete system of cast iron water mains of standard weight, so arranged as to provide best for a full and regular supply in all parts of the city, as well for domestic as public use, and

attach to said water mains, without cost to the city, forty-three double discharge fire hydrants of best and latest construction, at such points and places as the proper authorities shall designate, and to connect with such system of pipes or any addition or extensions thereto, as many additional fire hydrants as may be required by such authorities, provided that no extension of more than five hundred feet shall be made for each additional hydrant. Any of such hydrants shall be moved or changed at any time, by direction of said city, by said company, the costs of which shall be borne by the city.

Sec. 6. That the size of the water mains shall be as follows: Starting from such standpipe or water-works, there shall be laid an eight-inch pipe to Water and Fairfax streets, and up Fairfax street to Fifth street; there shall be a six-inch pipe laid from Fairfax and Fifth streets, in Fairfax street, to Tenth street, and from Fairfax and Fourth streets, in Fourth street, to Franklin street; thence west in Franklin to Sixth street. There shall be four-inch pipe laid from Franklin and Sixth streets, in Franklin street, to Sixteenth street; from Tenth and Fairfax streets, in Fairfax street, to Thirteenth street; thence south to Franklin street; from Fairfax and Twelfth streets north in Twelfth street, to Livingston street; thence east in Livingston street to Fifth street; thence south in Fifth street to Fairfax street; from Livingston and Fifth streets to Clinton street; from Sixth and Franklin streets south in Sixth street to Methodist street; thence west in Methodist street to Tenth street; thence north in Tenth street to Franklin street; on both Eighth and Ninth streets, from Fairfax to Franklin street. All of said pipe to be properly connected, so as to make one complete system of water main. All dimensions to be interior measure.

Sec. 7. That said company, its successors or assigns, shall, at the request of any citizen, without unnecessary delay, put down the necessary pipes, and connect same with system of mains, so as to supply said citizens with water for all domestic purposes.

Citizens to pay the actual cost of making such connections,

**332**     APPELLATE COURTS OF ILLINOIS.

VOL. 31.] Carlyle Water, Light & Power Co. v. City of Carlyle.

including necessary pipe. All service pipe to be paid for from center of street by property owner.

SEC. 8.   Said company, its successors or assigns, are hereby bound to have all injuries to streets, alleys and sidewalks caused by laying and operating such water-works, immediately repaired, so as to leave such streets, walks, etc., in as good condition as they were before said injury was done.

SEC. 9.   The city of Carlyle, by its city council, for and in consideration of the obligations imposed upon said company, its successors and assigns, by the foregoing sections, hereby agree to and · contract with said company, its successors or assigns, to accept the forty-three hydrants stipulated in section five of this ordinance, for the use of said city, as soon as the same are erected, connected with the water mains and supplied with water, and otherwise conform to this ordinance. And from that day to pay said company, its successors or assigns, the sum of $4,883 per annum for each and every fire hydrant above enumerated, and for each fire hydrant attached to any extensions or additions to above system the sum of $45 per annum for and during the term of this franchise, said payments to be made semi-annually; first payment to be made at the expiration of five months after the acceptance of said hydrants by said city ; said city shall draw orders for such payments as the same become due, and in the event of there being no funds in the treasury of said city for the payment of the same when drawn, then such orders shall bear interest from the date of their presentation to the treasurer of said city, until the necessary funds ·shall be in said treasury for the payment thereof, at the rate of six per cent. per annum. Provided, said works shall not be accepted by said city, until the said works are complete and in complete running order, according to the specifications set forth, nor until said company shall, by test, through such system, throw simultaneously· four streams of water from any four hydrants to be designated by the city council, through one hundred feet of two and one-half inch rubber hose and one-inch ring nozzle, at least sixty feet high by standpipe alone, and eighty feet high by direct pressure from the pumps, provided any two of said hydrants are located on a main fed from both ends.

SEC. 10.   The city of Carlyle reserves the right on and after the expiration of fifteen years, to purchase the works of said company, together with the extensions, rights, etc., belonging to the same, on giving the company six months notice in writing, the valuation to be determined by three disinterested persons, the city to choose one, the company one, and the two so chosen to select a third; and the valuation of the works by such appraisers, or if they fail to agree, then by a majority of them, who shall define the sum to be paid by the city to the company as to the value of the works, and either party shall have the right to call in expert testimony of no more than three witnesses each, and in case of failure on the part of the city to purchase the works when so appraised, then the expenses of such appraisement shall be borne by the city, and this contract shall continue, and the city shall have the right to purchase said works at the expiration of each five years thereafter in the same manner.

SEC. 11.   In constructing and operating said works the company shall be liable at any time for any damages arising from injury to property or persons in said city arising from negligence of said company or its servants, and said company shall save the city harmless from any damages therefrom.

SEC. 12.   The fire hydrants are to be used without charge to the city, for extinguishing fires, reasonable hose practice by fire companies, flushing sewers and gutters, and for washing all fire apparatus belonging to the city or its fire companies, and for no other purpose.

SEC. 13.   The city of Carlyle shall pass such ordinances as may be necessary to protect said company in its peaceable and uninterrupted exercise of its rights under this franchise.

SEC. 14.   Said company, its successors or assigns, shall have the right to adopt meter measure for water, and whenever, from any cause, such company shall be unable to supply water to either the city or its inhabitants, then all rents for the use of water shall cease during such period.

SEC. 15.   Said company shall execute a good and sufficient bond in the penal sum of five thousand dollars, conditioned for the faithful performance of the matters required of it by this ordinance.

334     APPELLATE COURTS OF ILLINOIS.

VOL. 31.]    Carlyle Water, Light & Power Co. v. City of Carlyle.

SEC. 16.    The following requirements shall be deemed as a part of this ordinance and contract:

1.    All walls shall be of brick or stone, and pump-house practically fire proof.

2.    The standpipe shall be laid upon a foundation of solid masonry, laid in cement.

3.    All water mains are to have three feet covering.

4.    All walls used in the construction of said system are to be of the best of their respective kinds, and pump-house practically fire proof.

5.    Said company shall connect its works with at least three different points, to be designated by the city council, by telephone or some other electric alarm; such communication to be in operation all the time.

6.    The standpipe shall be filled every night between the hours of 8 and 11 o'clock and at all other times practicable.

7.    A full head of steam shall be put on as soon as possible after an alarm of fire is given, and to that end said works shall at all times be kept in condition, by banked fire or otherwise, to facilitate an immediate force of steam.

Part of ordinance fixing rates for individuals. Approval of ordinance.

After the enactment of that ordinance the Water, Light & Power Co., of St. Louis, Mo., entered on the work of laying mains, putting in hydrants, erecting standpipe, engine house, etc., in accordance with the requirement of the ordinance.

The contract was assigned to appellant in May, 1887. Appellant proceeded to the completion of the works, and on August 8, 1887, the city council of the city of Carlyle passed a resolution extending the time for the completion of the contract thirty days. After the completion of the works by appellant the city council of the city of Carlyle, at a regular meeting of the council, entered an order as follows:

September 14, 1887.

"Ordered that the test of the Carlyle water-works take place on Friday, Sept. 16, 1887, at 10 o'clock A. M. The test to be made from four hydrants, to wit: From the hydrants on 16th and Franklin streets, 12th and Livingston

streets, 10th and Washington streets, 8th and Fairfax streets; also from 10th and Franklin streets and 7th and Franklin streets. Adjourned to Saturday, September 17, 1887, at 1 o'clock.

DARIUS KINGSBURY, Mayor.<br>C. R. BERNER, Clerk."

This action of the city council was in accordance with the proviso of section 9 of the ordinance above cited. On September 16th the test was made, and at a meeting of the city council on the 17th of September, 1887, the following proceedings were entered of record:

"Adjourned meeting of the Carlyle city council, held September 17, 1887, mayor and all members present. Proceedings of last regular meeting read and approved.

"The council, as a committee, report that the test of the Carlyle water-works was made on the 16th instant from one hydrant on 8th and Fairfax; from one hydrant at 10th and Washington; from one hydrant at 16th and Franklin, and from one hydrant at 12th and Livingston streets.

"The above test reported to have filled the requirements of Water-works Ordinance, No. 8.

"A second test was ordered for September 17th, at 11 o'clock A. M.; from one hydrant at 11th, one at 12th, one at 13th and one at 16th and Franklin streets. Test resulted in deficiency, and a new test from the same hydrants was ordered to take place at 3 o'clock of the same day from the same hydrants, with standpipe pressure only, the test resulting as follows: Hydrant at 16th and Franklin estimated at 46 feet; on 13th and Franklin, 53 feet; on 12th and Franklin, 45 to 48 feet, and on 11th and Franklin, 60 feet.

"The test made on the 16th and 17th inst. was made in the presence and by the approval of N. W. Perkins, secretary of the Water, Light and Power Co., he being the only representative of said company present at any of said tests. Therefore, in consideration of the premises the following resolution was unanimously passed by the council, to wit: Resolved, that the test made on the 16th and 17th instant, of the Carlyle water-works, not having come up to the require-

336    APPELLATE COURTS OF ILLINOIS.

VOL. 31.]    Carlyle Water, Light & Power Co. v. City of Carlyle.

ments of Ordinance No. 8, entitled, Water-works, it is there-
fore ordered that the said works be not accepted until said
works come to the test required by said ordinance.    Adjourned.
                              "DARIUS KINGSBURY, Mayor.
Attest:    "C. R. BERNER, Clerk."

On the trial, by agreement, the ordinance first above quoted
is regarded as the contract in the case.    The appellant insti-
tuted his action of assumpsit to recover, in accordance with
the contract, filing a declaration with special and common
counts.    The defendant pleaded the general issue and certain
special pleas, to which special pleas demurrers were inter-
posed and sustained.    Trial was had before the judge, a jury
being waived, and a verdict and judgment thereon entered for
defendant.

The proper location of watertower, fountains, waterpipes
and of everything else, except standpipe, was admitted by
defendant.    By the proviso of section 2 of the ordinance
the company was to "establish the best and most suitable
place within or near the eastern boundaries of this city for
the source of water supply, which shall be submitted to and
approved by the city council."

This is the only provision as to the selection and location of
any part of the works, and as everything is admitted to be
properly located except the standpipe, the question presented
is simply as to its proper location.

The only reservation by the city council as to its approval
of location is as to "the source of water supply;" and there
is such a difference between the meanings of the terms,
"source of water supply" and "standpipe," that one can not
be held to include the other.    The one is the point from which
the water is supplied; the other the place from which it is
distributed.    The reservation of the right to approve the
location of the water supply is not a reservation of the right
to approve location of the standpipe.

It appears that no objection was made during its erection
by officers of the city who had knowledge of the place where
it was erected and of the fact of its erection there.    Under
the contract the city did not reserve the right to approve the

location of the standpipe, and can not now be heard to complain of the point at which it was erected. From the records of the city council in evidence it appears that, on completion of the water-works, a test was to be made; and on the 14th of September, 1887, the city council, in accordance with the proviso of section 9 of the ordinance, selected four hydrants, designating them, and also selected two additional ones. The test was ordered to be made on the 16th of September.

As appears by the record of the city council of September 17th, the test from the four designated hydrants was satisfactory and in accordance with the requirements of the ordinance. And it does not appear from this evidence that the city council ever designated any other four hydrants than by its order of September 14th. It is true the mayor states that on the 16th, after the test had been made, there was an informal meeting of the board at the hotel corner, and Perkins, who was making the tests for appellant, was there, and said they could select any four hydrants they wanted and make a further test. He also states that there was no meeting of the city council on the 16th. The record of the city council of the 14th shows that an adjournment to the 17th, at one o'clock, was had. Now, by the proviso of section 9 of the ordinance, the hydrants from which the test was to be made must be selected by the city council, and that part of the pretended record of the city council of the meeting of the 17th which recites that a test was ordered for the 17th, at eleven o'clock A. M.. could not refer to a test ordered by the city council. Nor does the evidence in the case show that it was. Yet no test could have been ordered except by the city council.

But had the appellee the right, under the contract, to require a test made from more than four hydrants? As we construe the contract, the only test the appellee had a right to call upon the appellant to make, was from any four hydrants the appellee might select. Yet it is apparent the trial court held that the appellee had the right to require more than one test and from more than four hydrants. In this there was error.

338 APPELLATE COURTS OF ILLINOIS.

Vol. 31.]    Carlyle Water, Light & Power Co. v. City of Carlyle.

Certain propositions of law were submitted by appellee to be held, refused or modified by the court. The first was, that appellant must be required to make out its case by a preponderance of the evidence, which the court properly held. The second was, that "the defendant was not required to accept forty-three fire hydrants, as in said section provided for, until they had been tested in the manner therein provided for testing them, and it was ascertained by such test that they would do the work therein provided for them to do," etc. This proposition is, that the whole forty-three hydrants were first to be tested, but such was not the contract. Yet the court held this proposition as law. In this there was error.

A further error assigned by appellant was, that after verdict, and three days after, although before a motion for a new trial, seven propositions of law to be held, refused or modified, were presented to the court by appellant, which the court declined to consider. A verdict is defined as "the opinion of a jury, or a judge sitting as a jury, on a question of fact." R. & L. Law Dict. Sec. 42 of the practice act says: "In all cases in any court of record of this State, if both shall agree, both matters of law and fact may be tried by the court, and upon such trial either party may, within such time as the court may require, submit to the court written propositions to be held as law in the decision of the case, upon which the court shall write 'held' or 'refused' as he shall be of opinion is the law, or modify the same, to which either party may except as to the opinions of the court." After a case is decided propositions can not be held or refused in the decision of the case. The aid the court might have from the submission of the propositions in proper time, has been lost. And if, three days after verdict, propositions might be presented, final disposition of a case might be indefinitely postponed. We therefore hold that the propositions of law to be held or refused by a court sitting as a jury must be presented before verdict. So that there was no error in refusing to consider the propositions of law so presented by appellant.

Appellee assigns cross-errors, as follows: Sustaining demurrers to third and fourth special pleas and refusing appellee's fourth proposition.

Carlyle Water, Light & Power Co. v. City of Carlyle.

The fourth proposition presented by appellee is that the contract sued on is *ultra vires*, for the reason that it extends through a period of twenty-one years and deprives subsequent city councils of legislative control over the matter embraced in the contract. This identical question was passed on by the Supreme Court of this State in City of East St. Louis v. E. St. L. G. L. & C. Co., 98 Ill. 415, where it was held: "It does not appear in the case nor is it claimed, that the city has exercised its power by ordinance or otherwise, or manifested a wish to provide differently than as by the contract. So far as the contract has been executed it has been as one for the furnishing of the light during the pleasure of the city. Courts should not destroy the contracts made by parties further than some good reason requires. Such an objection as is made to this contract, that it interferes with the exercise of the legislative or governmental power of the city over the subject, does not require that the contract should be held void, but only voidable, so far as it is executory." To the same effect is Decatur Gas Light & Coke Co. v. City of Decatur, 24 Ill. App. 544.

There was no error in refusing to hold appellee's fourth proposition, and sustaining the demurrer to appellee's fourth plea was proper. That plea is that the defendant, the city, was indebted in the sum of $1,000 other than by this contract, and that the entire taxable property within the corporate limits was only $256,740; that the indebtedness created by this contract was $44,100, and exceeds five per centum of the value of all the taxable property of the city. This amount of indebtedness is reached by assuming that the forty-three hydrants, at $48.83 per hydrant, for twenty-one years, is an immediate, present indebtedness, which is not correct. E. St. L. v. E. St. L. G. L. & C. Co., *supra.*

The third special plea, to which the demurrer was sustained, was, that previous to the contract no appropriation was made by the defendant. The contract was for furnishing an article of daily consumption during a period of twenty-one years, fixing the price per hydrant. It was within the power of the city to contract to have the water. It did not, by the con-

tract, provide for any indebtedness except for water furnished. When the works are kept in such a condition as to keep up a supply of water, then, and only then, does the indebtedness accrue, at the contract rate; but to keep the standpipe and entire system in such a condition as to supply water to the city, as required, involves labor and expense to the appellant, in the payment of employes, the wear and tear of machinery and the consumption of fuel, besides the cost of repairs; such is the burden upon appellant to keep itself in a condition to furnish water under the contract before being entitled to pay. There was no indebtedness by the contract at the time the contract was made. Nor was there any indebtedness at the time the city found that the works contracted for were completed in accordance with the contract. When the works were completed and the water kept to the required height in the standpipe, with engine fires kept banked and ready, and mains and hydrants in good repair and ready for service during a period stipulated in the contract, then, and only then, a liability to pay under the contract was incurred by the city, if incurred at all, and then only for such term as had already expired. This being so, then no appropriation was necessary at the time or before entering into the contract. The demurrer to the third plea, therefore, was properly sustained.

For the errors indicated, however, the judgment must be reversed and the cause remanded.

<em>Reversed and remanded.</em>