WADSWORTH v. CONCORD.

(Filed December 8, 1903.)

MUNICIPAL CORPORATIONS—*Elections—Cities and Towns—Const. N. C., Art. 8, sec. 4—Acts (Private) 1903, chs. 85, 86.*

> Where a statute provides that an election shall be held to pass upon the question whether a town shall incur the expense of an electric light system, the board of aldermen cannot contract for the establishment of such electric light system without first submitting the question to a vote of the people of the town.

CLARK, C. J., and DOUGLAS, J., concurring in result, hold that a municipal board cannot bind the town by a contract as to necessary expenses to be incurred after their term of office shall expire.

ACTION by J. C. Wadsworth against the city of Concord, heard by Judge *Thomas J. Shaw,* at Chambers, at Shelby, N. C., March 26, 1903. From a judgment for the plaintiff the defendant appealed.

*L. T. Hartsell,* for the plaintiff.
*Montgomery & Crowell, Burwell & Cansler* and *W. M. Smith,* for the defendant.

CONNOR, J. The General Assembly of 1903, chapter 85, Private Laws, amended the charter of the town of Concord. By section 5 of said act it is provided: "That the commissioners or board of aldermen of said city shall have the power and it shall be their duty to provide for lighting the streets and public buildings of said city and to contract for and pay for the same." At the same session, Private Laws, chapter 86, we find an act entitled: "An act to authorize the commissioners for the town of Concord to contract for lights for said town." It is provided that whenever twenty citizens

WADSWORTH *v.* CONCORD.

of said town shall apply to the commissioners by a written petition, asking the commissioners to light the streets and public buildings, it shall be the duty of the said commissioners to order an election to be held in said town, at which election those in favor of lights shall vote a ticket on which shall be written or printed the word "Light" and those opposed shall vote a ticket on which shall be written or printed the word "Darkness." If a majority shall vote "Lights," then said commissioners shall have full power and authority to contract for such lights in such quantities and upon such terms as said commissioners may deem for the best interest of said town, for a period not exceeding twenty years, or said commissioners shall have the right to erect or purchase a plant for lighting said town and operate the same. It is further provided that if a majority of said citizens shall vote for lights, the commissioners may levy a tax to pay for the same. No limit is fixed to the rate or amount of such tax, except that it shall be sufficient to pay "regularly and promptly for said lights." These statutes were ratified on the 16th of February, 1903. On November, 1902, the defendant entered into a contract with Thomas A. Scott and his associates for the purpose of lighting the said streets, the terms of which are fully set out in the record, which was to run for the term of eighteen years, and which conferred upon the said Scott and his associates a franchise for twenty-five years for commercial and domestic lighting. No petition was ever filed and no election ever held pursuant to chapter 86 of said acts. We do not deem it necessary to set forth more fully the terms of the contract.

The sixth allegation of the answer, filed the 25th of March, 1903, recites a resolution referring to the Acts of 1903, chapter 85, and reciting: "Whereas, the town of Concord has a population of about ten thousand people, many hundreds of whom work in the mills between sundown and sunrise, and

has about thirty miles of public streets, and a lot of public buildings; and Whereas, it is not only the sense of the board of commissioners for the town of Concord that it is a necessary expense of said town to light the streets and its public buildings, but the Legislature now in session has given the city the power to provide for lighting the streets and public buildings of said city, and to contract for and pay for same; now, Whereas, the contract heretofore entered into with Thomas A. Scott and Reuben Burton is fair, just and equitable, and to the best interest of said town; Therefore, be it resolved by the commissioners of the town of Concord that said contract with Thomas A. Scott and Reuben Burton be and the same is hereby in all respects confirmed."

In view of the answer and the legislation in respect to the town of Concord prior to February 16, 1903, it would seem that whatever validity this contract has is by virtue of the two acts hereinbefore referred to. This is evidently the view of the defendant. Certainly if the contract was incomplete prior to February 16, 1903, the attempt to confirm it without complying with chapter 86, Laws of 1903, could have no other or further effect than if it had been originally made at that time. No explanation is given in the answer why this contract was not submitted to a vote of the people pursuant to chapter 86 of the Laws of 1903. As we have seen, the act authorized and directed this course to be pursued upon the petition of twenty citizens, and it would have required but a short time to have submitted it to the voters and thereby removed all questions in regard to its validity.

This action is brought by the plaintiff, a citizen and taxpayer, for the purpose of enjoining the town from entering into said contract. A number of interesting questions were discussed before us upon the argument and in the briefs, respecting the right of a town to enter into a contract of this character for the purpose of furnishing lights as a "necessary

expense." Whatever views we may entertain upon that question, we are of the opinion that the power of the commissioners to enter into a contract for lighting the said streets is prescribed by and restricted to the provisions of chapter 86, Private Laws of 1903. The two statutes should be read together, and thus read they make it the duty of the commissioners and empower them to provide for lighting the streets and to contract and pay for the same when empowered so to do in the manner pointed out in the statute. It may be that by a proper construction of the charter the power is conferred to provide lights and pay for the same out of the ordinary revenues of the town, but if the citizens wish a more extended or permanent system for lighting the town, requiring the levy of a special tax, they may confer upon the commissioners the power to make the contract not exceeding twenty years. It would seem clear that it was the purpose of the Legislature to restrict the power to make such contract by the terms of chapter 86, otherwise this act, which was evidently passed as a companion to the act amending the charter, chapter 85, would be of no effect. "Respecting the mode in which contracts by corporations should be made, it is important to observe that when, as is sometimes the case, the mode of contracting is specially and plainly prescribed and limited, that mode is exclusive and must be pursued or the contract will not bind the corporation." Dillon Mun. Corp., sec. 449.

In *Zottman v. San Francisco,* 20 Cal., 102, 81 Am. Dec., 96, *Field, C. J.,* says: "The mode in such cases constitutes the power. * * * Aside from the mode designated there is want of all power."

The Court, in *Des Moines v. Gilchrist,* 67 Iowa, 210, says: "It is a general principle of the law that the specific designation of the manner of exercising a power operates as a limitation upon the general power conferred." The Code of Iowa

conferred upon cities the general power to make regulations against danger from accident by fire, and to establish "fire districts," and on petition of the owners of two-thirds of the grounds included in any square to prohibit the construction of wooden buildings, etc. It was held that an ordinance prohibiting wooden buildings within such squares passed without the petition of the requisite number of property owners was void.

"Where a thing is directed to be done through certain means or in a particular manner, there is implied an inhibition upon doing it through any other means or in a different manner." *Keckuk v. Scroggs,* 39 Iowa, 447.

A statute authorized the council of Pittsburg to grade, on the application of a majority of the lot-holders of the street, and to assess the cost, etc. It was held by the Supreme Court of Pennsylvania, *Sharswood, J.*, that "Without such application the city had no power or jurisdiction in the premises." *Pittsburg v. Waters,* 69 Pa. St., 365.

In *Swift v. Williamsburg,* 24 Barbour, 427, the plaintiff having performed services for the city upon a contract made in the absence of a compliance with the statute requiring a petition by the requisite number of citizens, the Court says: "If plaintiff can recover on the state of facts he has stated in his complaint, the restrictions and limitations which the Legislature sought to impose upon the powers of the common council go for nothing. And yet these provisions are matters of substance, and were designed to be of some service to the constituents of the common council."

"It is an elementary principle of construction that charters of corporations conferring powers are to be construed strictly." Cooley Const. Lim., 232.

It does not appear why, with this act in full force and effect, the commissioners entered into the contract in controversy without consulting or having the approval of the citizens

of the town. With this, of course, we have nothing to do. It is ours to construe and declare the law. The passage of chapter 86 is strictly within the power and duty of the Legislature, as prescribed by Article 8, section 4 of the Constitution: "It shall be the duty of the Legislature to provide for the organization of cities, towns and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent abuses in assessment and in contracting debts by such municipal corporations."

Whether providing lights for the city is a necessary expense is an interesting question. It has been discussed and considered by this Court in *Thrift v. Elizabeth City,* 122 N. C., 31, 44 L. R. A., 427. We are of the opinion that when it is made the duty of the commissioners to provide lights it is at least a legislative construction of the Constitution that it is a necessary expense. To what extent they may incur debts or make contracts for a long term is a delicate and important question not necessary to be decided in this case. It is within the province of the Legislature to prescribe the terms and conditions upon which municipal corporations may enter into such contracts. It is held by many respectable Courts that the power to make such contracts is unlimited as to time. There are authorities to the contrary. The question is of much importance to the citizens of this State, and deserves the careful consideration of the legislative department of the government.

We think that for the reasons hereinbefore set out the judgment of his Honor should be

Affirmed.

CLARK, C. J., concurring in result. The mayor and commissioners of the town of Concord, in November, 1902, entered into a contract with Scott & Burton for lighting the

public buildings and streets of said town with electricity for the term of eighteen years from 1st June, 1903. The town has been lighted by electricity for the last thirteen years, the current contract not expiring till 1st June, 1903. This is an action brought by a citizen and tax payer to restrain the town authorities from paying out any money under said new contract, on the ground that the town had no power to make such contract without having first obtained the consent and approval of a majority of the qualified voters of said town, which had not been done. The Judge, being of opinion with the plaintiff, granted an injunction till the hearing, and the defendant appealed. A tax payer can bring such action. *Flynn v. Electric Co.,* 74 Minn., 180; 2 Dillon Mun. Corp., sec. 914-922; *Crampton v. Zabriskie,* 101 U. S., 601; *Prince v. Crocker,* 166 Mass., 347; 32 L. R. A., 610.

Furnishing light and water for public purposes is in this day and time "a necessary purpose," and has been so recognized. *Gas Co. v. Raleigh,* 75 N. C., 274; *Smith v. Goldsboro,* 121 N. C., 350; Croswell Electricity, sec. 190; *Crawfordsville v. Bradan* (Ind.), 30 Am. Rep., 214, and notes; *Heilbron v. Cuthbert,* 96 Ga., 312; *Ellenwood v. Reidsburg,* 91 Wis., 131; Opinion of Justices, 150 Mass., 592, 6 L. R. A., 842; *Rushville v. Rushville* (Ind.), 6 L. R. A., 315; 16 Am. Rep., 388; *Mauldin v. Greenville,* 33 S. C., 1, 8 L. R. A., 291; *Lott v. Waycross,* 84 Ga., 681; 1 Dillon Mun. Corp. (4 Ed.), sec. 3a, and other cases cited in *Mayo v. Comrs.,* 122 N. C., at p. 25. *Mayo v. Commissioners,* 122 N. C., 5, 40 L. R. A., 163, is only a precedent that the erection by a city of an electric light plant is not a public necessity, but that point is not presented in this case, and it is not necessary that we should pass upon it. *Egerton v. Water Co.,* 126 N. C., 93, 48 L. R. A., 44, is the only case in which it has been held (and there by a divided Court) that furnishing a town or city with a supply of water is not a necessary expense,

and upon fuller consideration we must overrule it. All the towns in the State, of sufficient size, have, notwithstanding that decision, continuously down to the present continued to furnish light and water for public purposes, and the validity of such contracts, even to the extent of conferring a right of action for breach thereof upon beneficiaries though not parties to the contract, was upheld in *Gorrell v. Water Co.*, 124 N. C., 328, 70 Am. St. Rep., 598, 46 L. R. A., 513. In that case there was an act of the Legislature authorizing the contract, but it does not appear that the matter was submitted to a vote of the people, which would have been indispensable if furnishing water had not been "a necessary expense." Const., Art. VII, sec. 7. Furnishing light and water, for public purposes at least, being a necessary expense, the only question remaining is: for what period are the municipal authorities authorized to so contract? Can they contract for any period, however long? Can they contract for one hundred years, or eighteen years (as here), or for ten years, and thus tie the town down for long years to a system which in the rapid march of improvement may become antiquated, or be superseded by the invention of a far better or a far cheaper system, or which may become unfitted to the proportions which a growing town may soon attain? The Courts in the later cases, oppressed with the force of this objection, have laid down the principle that the length of time must be "reasonable." This is objectionable unless there is a rule to determine what is reasonable; otherwise, it will leave the decision of reasonable time in each instance to the views of the particular Judge or Court which tries the case, the rule of "the Chancellor's thumb." Besides, if the town authorities have power to make the contract at all, they and not the Court are to judge of the extent of the exercise of power confided to them (*Broadnax v. Groom*, 64 N. C., 644) in the

absence always, of course, of fraud, which is not charged here.

Yet there must be some restriction *ex necessitate* in the duration of such contracts. Certainly the most logical one is this: that inasmuch as the town authorities are elected for a specified fixed term to furnish, among their other duties, those things which are necessary expenses for the town, that the authority of the commissioners to contract for such necessities is restricted to the time for which they have been chosen by the people to discharge that duty, *i. e.*, for their term of office, and they cannot make a valid contract for such purpose beyond the term for which they have been authorized to act in supplying such necessary things. Certainly this is a safe rule, free from the fluctuations and arbitrariness incident to the doctrine of "reasonable duration" (unless the term of office is reasonable time), and this Court is as fully empowered to establish this rule by way of precedent as the Courts which have created the rule which subjects the length of every contract to be "validated" by a law-suit. Under that system no contract is certainly valid unless passed upon by litigation instituted for that purpose.

It is true it is argued in this case that no contractor will go to the expense of establishing a light plant for a short-term contract. This is merely the argument *ab inconvenienti* and would make it a matter of consideration not between the town authorities (elected by the people thereof) and the contractor but between a court (not acquainted with the needs of the town and attendant circumstances) and the contractor, how short a term the latter can be induced to take. Furthermore, if the contractor is not willing to take a contract for two years (the term of office), with the opportunity to furnish private consumers, and trust to the reasonableness of his prices and the advantages of already having a plant to procure a renewal from the board successively elected each two

years, then it is open to the town either to establish its own light and water plant, as most progressive towns are doing, or the desired contract can be submitted to the qualified voters upon legislative authority, to make a contract for such period as the popular voice may ratify at the ballot box. It is always a sound policy to consult the will of the taxpayers upon an expenditure of this importance, especially when the engagement is to extend some years into the future.

"It may now be taken as well settled by this Court that water and light are not in themselves such necessary expenses of the town as to authorize an *unusual* levy of tax or the *incurring of a debt* without proper legislative authority and the approval of a popular vote." *Thrift v. Elizabeth City,* 122 N. C., 31. That authority is exactly in point, and we have none to the contrary. In that case a contract to supply the town with water for thirty years was held invalid, the Court saying, through *Douglas, J.,* that "there is no difference between making a contract binding a municipality for a long period of years, requiring the payment of a large yearly sum, and the issuance of bonds of the municipality to run a like period."

The view herein expressed, that furnishing water and light for public purposes is a necessary expense, but restricting the power of the town commissioners to contract to the term of their office (in the absence of special authorization by a vote of the people to contract for a longer period), reconciles and puts in perfect accord the proposition laid down in *Thrift v. Elizabeth City, supra,* with the ruling of the Court, stated by the same learned Judge, in *Smith v. Goldsboro,* 121 N. C., at p. 352, as follows: "The city provides for its citizens electric lights and water, as it is its duty to do; * * * the defendant has taken possession of said street in order that it may perform its duty to its citizens and furnish water and lights to the owners of said lots." It is not the *duty*

of the town commissioners to furnish water and lights longer than the period for which they have been elected to do that duty. And in the absence of a special authorization by popular vote they have no power to go beyond their term of office and, by a contract extending beyond their term, provide for future years and thus tie the hands of their successors, who may be able by their better judgment or by reason of the progress of invention to furnish the public with necessaries by a better or more economical method.

In this state of the law, those desiring profitable contracts will not be tempted (as in some cities) to spend money to elect a temporary board to make contracts, pillaging the tax payers for a long period of years. They can only get long contracts from the people at the ballot box with full discussion and publicity. Already, in these last few months, a well-known discovery promises with good reason to reduce electric lighting to one-eighth of its present cost. If it were a question, therefore, for the Courts to pass upon the "reasonableness" of time and prices of a contract by a municipality, could this contract for eighteen years and $85 per year for 1,200-candle-power light be held reasonable?

We come to the same conclusion as his Honor, though for a somewhat different reason, that the contract to furnish the town with electric lights for eighteen years is invalid. Section 5, chapter 85, Private Laws 1903, authorizing the town commissioners of Concord "to provide for lighting the streets and public buildings of the city and to contract and pay for the same" does not affect what is said above, for such power was already in them, but not to be exercised beyond their term of office unless submitted to a vote of the people, since it cannot be "a necessary expense" to bind the town now to the rates and terms of the proposed contract "for a long period of years." *Thrift v. Elizabeth City, supra.* Indeed, the act of 1903 does not contain any words attempting to

confer upon the commissioners such authority. It merely gives them the ordinary right to provide for lights, which, as we have seen, means the *right* to contract for lighting for such period as it is their *duty* to furnish lights. But whether this act may not authorize the establishment of a municipal plant, as a *present* "necessary expense" (and not a continuing expense), like the power to build a town jail or guard house, *McLin v. Newbern,* 70 N. C., 12, or to erect a city hospital, *Smith v. Newbern,* 70 N. C., 14, 16 Am. Rep., 766, or like a county building a court-house, *Vaughn v. Commrs.,* 117 N. C., 429, and as is held as to an electric light plant in *Light Co. v. Jacksonville* (Fla.), 51 Am. St. Rep., 24, 30 L. R. A., 540, and in *Mitchell v. Negaunee* (Mich.), 38 L. R. A., 157, 67 Am. St. Rep., 468, is, as already stated, a matter which is not before us.

The views above expressed will not invalidate any contract for necessary expenditures during the term of office of any board of commissioners who have made such contract, nor during the term of any board which has ratified or recognized and acted upon such contract, but at the end of the current term of such board the contract will not be binding on their successors unless ratified or recognized by them, except, of course, in those cases in which a contract for a longer term has been authorized by popular vote.

Where a contract for lighting, water and the like is to be be made, it is for the public protection that it shall not be binding for a longer time than the duration of powers of the temporary agents, the town commissioners. To be binding beyond that term, the people can and should be consulted at the ballot box, as in the recent struggle for good government in Chicago over the granting of franchises for street cars. The assumption of authority by the board of aldermen to contract, without a vote of the people, beyond their term has elsewhere led to untold corruption, and we

should be warned against opening the door here by precedent, though there is no intimation of fraud in this case. All the Courts now hold that the power of the town authorities to contract must be restricted to "a reasonable time." Instead of a contest in the Courts in each case, as to what is a reasonable time, to the detriment of contractors as well as the town, a reasonable time is the term of office of the town authorities, since within that time if a longer contract is desirable the matter can be submitted to the people at the ballot box. They, and not the Courts, are the tribunal to determine what is such reasonable time for which they are to be bound.

When, however, a contract has already been made beyond such "reasonable time" the contract is not void but voidable. The Courts have held in such cases that for the time the contract has been *executed* the town must pay for what it has received thereunder. *Carlyle Water Co. v. Carlyle,* 31 Ill. App., 325 ; *E. St. Louis v. Gas Light Co.,* 98 Ill., 415, 38 Am. Rep., 97. As to the *executory* part, the authorities then in office can ratify it for their term, but as to the part beyond their term, the people not having elected the commissioners to represent them beyond such term of office, such contract can only be made subject to approval at the ballot box. One Legislature cannot bind a succeeding one by a legislative contract enforcible at law ; nor can one board of town representatives bind its successors. I Dill. Mun. Corp. (4 Ed.), sec. 97. There were authorities, before the abuses of contracting by town authorities were so well known or had become so unpleasantly notorious, that they could make contracts extending beyond their terms of office—"the evil that men do live after them." The more recent authorities are that such contracts are only valid if of "reasonable duration," though of course compensation even in such case is recoverable for the *executed* part of the contract.

The better reason, and the evident intent of constitutional provisions in several recent Constitutions, is that such "reasonable time" is the term of office of the officials acting on the contract, and if a longer time is desirable the matter should be referred to popular vote, as can be so readily done. Our towns and cities should have this protection, especially in view of the present and prospective growth of municipal indebtedness, which bids fair to outstrip even their growth in population. This view conflicts with none of our precedents, will safeguard our towns and cities from improper debts, often fraudulently made according to experience elsewhere, and will in no wise hamper municipal administration, seeing that ordinary supplies and requirements need not be contracted for longer than two years, the term of office.

Of course the General Assembly can, by general statute applicable to all municipal corporations, or by special statutes applicable only to the town or towns named, authorize the boards of town commissioners to contract for a specified length of time, beyond their terms of office, and they will be then elected by their respective constituency with knowledge on the part of the electorate that such officials can bind the municipality for such length of time for necessaries to be furnished even after they shall go out of office. But as the law now stands there is no such statute and the power of the municipal boards to bind the municipality by their contracts expires with their power of attorney, their term of office, leaving the town to be bound thereafter only by the ratification, express or implied, of such contract by the newly-elected board. If this were not so, it would follow that a town board could bind the town for contracts, far into the future, to furnish water, lights and other necessaries, at high figures, perhaps, while under *Mayo v. Commissioners,* 122 N. C., 5, they are disabled to contract for a water or light plant for which the municipality would receive at once prop-

erty in hand in return for its cash or bonds. Such practical result would afford opportunity to prevent for a long time the acquisition of water and light plants by any town boards forestalling public opinion where it might be in favor of municipal ownership, and would offer opportunity for palpable abuses. I do not think such is now the law, but that in the absence of a statute giving them such power the town boards of commissioners cannot bind the municipalities beyond the terms for which they are elected and empowered to act as municipal agents.

In the present case the judgment should, in any view, be modified, so as to dissolve the injunction during the current term of the commissioners, but for the fact that the contract by its terms was not even to begin till (1st June, 1903) after their term of office ended and has never had any validity. Water and lights are necessary expenses during the term of the town commissioners or aldermen whose *duty* it is to furnish them, but they are not necessary expenses which such authorities must or can incur for their successors in office, unless authorized thereto by a vote of the people.

DOUGLAS, J., concurring. I fully agree with the opinion of *Clark, C. J.,* that while water and light are not in themselves such necessary expenses of the town as to authorize an *unusual* levy of tax or the *incurring of a debt* without proper legislative authority and the approval of a popular vote, they are proper subjects of expense to be provided by the municipal authorities out of the current revenues of the town. In fact, I think it is the duty of the board of aldermen to provide them to the fullest practical extent without overstepping the constitutional provision. As this duty is incidental to their tenure of office, it is logically coterminus therewith. In common with all other duties, it begins with their induction into office and ends with the expiration of their term. This seems

to me the only solution of the matter that is capable of practical application. My views are so fully expressed in *Smith v. Goldsboro,* 121 N. C., 350, and *Thrift v. Elizabeth City,* 122 N. C., 31, in both cases speaking for a unanimous Court, that but little remains for me to say. I now realize more fully than ever before the absolute necessity of standing by the doctrines laid down in those opinions, and of throwing around the honest tax payer the fullest protection of the law. Even under the strict construction placed by this Court upon municipal powers, many of our cities and towns, especially those of most rapid growth, are assuming pecuniary burdens that must prove most onerous in less prosperous times. With many of its richest citizens having a legal residence on their farm or some other out-of-the-way place, and its largest corporations operating under foreign charters, the average city tax payer already bears a burden out of proportion of his share of the common benefit. Let us not add to it by letting down the bars that the Constitution has erected for his protection. Let us give at least some voice in incurring the debt to him who will be called upon to pay the debt.

I am aware of the vexed problems that confront us and the difficulty of their solution, but they must be met by giving the fullest protection to the citizen without unnecessarily hampering municipal officers in the legitimate discharge of their duties. In *Thrift v. Elizabeth City, supra,* this Court says, on page 34: "We see no substantial difference between issuing bonds to run for thirty years and the making of a building contract for the same period, requiring the town to pay a large yearly sum which cannot be reduced, but which may be greatly enlarged." In the light of a larger experience and maturer judgment, I think there is a difference, and that decidedly in favor of the bonds. If a city issues its bonds and buys its water-works or light plant, it has something of value that will become more valuable with its increase

in population; while on the other hand, if the city pays rent, its rental will necessarily increase with its increased consumption. The entire trend of modern authority is to restrict all municipal contracts to a *reasonable* duration; and realizing the shifting scale of judicial discretion, I am in favor of some definite rule, not only for our own guidance, but for that of the general public. That which seems most logical in its nature and practical in its application is to restrict such contracts to the official term of those by whom they are made.