PLAINTIFF'S APPEAL.
This was a controversy without action. The pertinent facts, out of which this controversy arose, are as follows: The town of Henderson, a municipal corporation, granted, in 1892, to the assignors of plaintiff a franchise for forty years to supply water for fire purposes and other public uses, and to its inhabitants, at a fixed maximum rate of charges, and prescribed the standard of efficiency, granting to said assignors of *Page 169 
plaintiff the right to lay their pipes and mains under the streets and other public ways in the town, reserving the right to compel the plaintiff to extend its mains and pipes as the public interest demanded, and fixed the rental to be paid by the town for the use of the water for fire purposes at so much per hydrant, and containing a provision for the town to purchase, at stated intervals and at a price to be determined in a prescribed way. The particular section of the franchise-contract giving occasion to this controversy provides as follows:
"Sec. 9. Water shall be furnished free of charge to five (5) drinking fountains, with openings for man and beast; . . . also for churches, public schools, town offices, market houses for city use and all other town offices now in use or to be erected." (173)
The General Assembly, by chapter 91, Private Laws 1901, established the Henderson Township Graded School District and incorporated the defendant, giving to it the entire charge of the public schools and public school property in said district. This act was ratified, as required by it, on 6 May, 1901. The territory within the jurisdiction and control of the defendant embraced the town of Henderson and that part of the township lying beyond its corporate limits. Two frame public school buildings were erected by the defendant, under that act, in the corporate limits of the town and furnished with water by the plaintiff free of charge. Under the provisions of chapter 56, Private Laws 1905, an election was held in said township to authorize the issue of school bonds to the amount of $20,000. With the proceeds of the bonds the defendant has erected two large brick buildings in the corporate limits of the town and six buildings outside the town limits, and discontinued the use of the two frame buildings. Under section 6, chapter 820, Laws 1907, the public schools in the town have been declared public high schools, and it is competent, under said section, for the defendant and the County Board of Education of Vance to enter into an agreement to permit children and teachers of public schools of the county to enter certain grades in said schools. It would seem that some such agreement has been made and some children from beyond the corporate limits do attend the schools in the town. The public school census shows 3,084 children within school age in the township of Henderson, of whom about two-thirds live in the town. There has been no census of school children in the town. There is not now, nor ever has been, any provision of law for any school under the jurisdiction of the board of commissioners of the town of Henderson. The plaintiff has been furnishing the public schools in the town with water (no demand being made to furnish the schools outside the town), the schools being provided with lavatories, closets and drinking fountains, and by its meters ascertained that the and prescribed the standard of efficiency, grantiny [granting] to said assiynors [assignors] of *Page 170 
December, 1908, amounted, at its regular rate, to $693.40, and the water used at the public school for colored people from 1 September, 1908, to 31 December, 1908, amounted, at the same rate, to $49.37. The plaintiff presented bills to defendant for these amounts and demanded payment; the defendant refused to pay, and this action was begun.
His Honor rendered the following judgment: "Now, after consideration thereof, and of the argument of counsel, the court is of opinion that, under its contract with the town of Henderson, the plaintiff is (174) required to furnish water free for use of the public schools maintained in said town for pupils residing in the corporate limits of the town of Henderson, but not for use of pupils patronizing said school in the said town, but residing outside of the corporate limits of said town of Henderson; and it appearing from the case agreed that at this time about one-third of the pupils in the graded school district entitled to attend said schools reside outside of the town of Henderson, and that at this time about two-third of said pupils reside in the corporate limits of the town of Henderson, it is now by the court ordered and adjudged that the plaintiff recover of the defendant, the Board of Trustees of Henderson Graded School, and they are commanded to pay the same out of the revenues and income from taxation and other sources from which said schools are maintained, the sum of two hundred and forty-seven and 59-100 dollars ($247.59), with interest thereon from the first day of January, 1909, till paid, and the costs of this controversy, the same being amount in full due by defendant for use of water to 1 January, 1909. And it is further adjudged that the plaintiff recover of the defendant the further sum of one-third of the amount for water used by defendant in said schools, at the regular price or rate for which water is provided to others, from 1 January, 1909, to 1 June, 1909, and said defendant is commanded to pay the same out of the revenues and income from taxation and other sources from which said schools are maintained, as heretofore set out. And it is further ordered and adjudged that in the future use of said water, after the first of June, 1909, which plaintiff is required to furnish to defendant, shall pay therefore at the usual or such rates as may be agreed on for all pupils patronizing said schools who shall not be residents of the town of Henderson, in proportion as such number shall bear to the whole number of pupils attending such schools; such number to be ascertained by an actual count by defendant, but such count to be subject to revision by the judge of the Superior Court presiding at any term of the court held in Vance County, in case of disagreement with plaintiff."
From which judgment both plaintiff and defendant appealed. *Page 171 
After stating the facts: The plaintiff contended that it was not bound by the franchise-contract with the town of Henderson to furnish any water free of charge to the public schools under the control and management of the defendant, the Board of Trustees of the Henderson Graded Schools. It based its contention before us (175) upon the following grounds: (1) That the stipulation in the franchise-contract, to wit, "Water shall be furnished free of charge, etc.; also for churches, public schools," was invalid, because ultravires of the town of Henderson. (2) That those words can embrace only public schools established and maintained by the corporation, the town of Henderson, and do not include public schools within the corporate limits not so established and maintained; and the schools controlled by the defendant, a separate and distinct corporate body, are not within this meaning. (3) That the territorial area for educational purposes under the control of the defendant is much larger than the corporate limits of the town of Henderson, and that, although it is sought to compel it to furnish water free only to the public schools within the corporate limits of the town of Henderson, yet persons other than those children living within said corporate limits have a legal right to attend these schools in the corporate limits of the town, and do attend them.
By section 24, chapter 241, Private Laws 1889, the Board of Commissioners of Henderson are authorized, among other powers specified, "to provide water and lights for said town, and to contract for the same." The plaintiff does not seek to annual the entire contract with the town, but questions the validity of the stipulation for free water to the public schools. The determination of this question necessarily involves the validity of the contract and the extent of its obligatory force; for if the town was without power to make the contract and it was void, the entire contract would be a nullity; and if the whole falls, each stipulation must likewise fall. Contrary to the decisions of this Court in the earlier cases in which this question was considered, it is now established by the later decisions that the supplying of water and lights by a city or town is a necessary expense," and that this power, even in the absence of express grant, is a power necessarily and reasonably implied in its general grant of powers, and can be exercised by its governing authorities, unless expressly forbidden by the provisions of its charter. If the charter prescribes the particular mode in which the power can be exercised, that mode is exclusive and must be followed. Fawcett v. Mt. Airy, 134 N.C. 125, overruling Mayo v. Comrs., 122 N.C. 5; Davis v. Fremont, 135 N.C. 538;Robinson v. Goldsboro, 135 N.C. 382; Wadsworth v. *Page 172 Concord, 133 N.C. 587, overruling Edgerton v. Water Co., 126 N.C. 93;Smith v. Goldsboro, 121 N.C. 350; Gas Co. v. Raleigh, 75 N.C. 274;Greensboro v. Scott, 138 N.C. 181; Elizabeth City v. Banks, 150 N.C. 407. But the power, it would seem, is denied to a city to grant a valid franchise to individuals or to a corporation to tear up its streets (176) and lay water and gas pipes thereunder for the sole purpose of supplying water or gas to its inhabitants. This is determined by this Court in Elizabeth City v. Banks, supra. In that case this Court, in construing the charter of Elizabeth City, said: "We find no grant of power to make provision for furnishing lights, power or fuel, or for establishing plants for that purpose. No question is presented upon this record in regard to the power, by implication, for providing or lighting the street. This would doubtless be found, by necessary implication, in the power to regulate the streets, provide for the safety of the people, etc. This, under the more recent decisions of this Court, would be not only an implied power, but a duty, the discharge of which would involve a necessary expense. Fawcett v. Mt. Airy, 134 N.C. 125; Davis v. Fremont,135 N.C. 538 and other cases reversing Thrift v. ElizabethCity, 122 N.C. 31. It will be noted the contract with defendant Banks makes no other provision for furnishing light for the streets than a permission to make a contract with the city for that purpose. He is under no obligation to do so. This question is therefore eliminated from the discussion. The purpose of granting the franchise is to permit defendant Banks to supply light fuel and power to the citizens of the town." The present case is distinguished from Elizabeth City v. Banks,supra, not only in the matter noted in the above quotation from that case, for in the present case the plaintiff obliges itself to furnish water for public purposes and uses, but by the further difference of more enlarged powers of the town of Henderson in its charter, and that in that case the contract had not been performed, while in the present case the contract has been executed; the plaintiff has enjoyed its benefits, but seeks to escape its burdens. Even if the franchise-contract wasultra vires of the town of Henderson, because its board of commissioners could not, under the power it possessed at the time of entering into it, make a contract for forty years, as suggested in the concurring opinion of Clark, C. J., in Wadsworth v. Concord, supra, and as held in Thriftv. Elizabeth City, 122 N.C. 31, yet the plaintiff could not recover for the performance of its own obligation for the time the contract had been executed and for the time it had enjoyed the benefits and advantages accruing to it under the contract, contrary to its express stipulation.Trustees v. Realty Co., 134 N.C. 41; Wadsworth v. Concord, supra, at p. 599; Hill v. R. R., 143 N.C. 539, at p. 582. To what time the ratification of the contract by the town of Henderson, if the contract has *Page 173 
been ratified, since the enactment of subsection 6 of section 2916, Revisal 1905, has prolonged or will prolong the life of the contract, we will not attempt to determine in the present case, as it is not (177) necessary for the determination of the questions decisive of it. The validity of the franchise-contract, as far as necessary to be determined in this case, being settled by the cases cited, is the plaintiff obliged by its express stipulation to supply water free of charge to the public schools, and, if so, what public schools? The fact that a compliance with the stipulation was burdensome to the plaintiff can be no reason for changing its relation to it after performance. The purpose of this stipulation was certainly not immoral; it was not contra bonos mores. This duty is a continuing duty, imposed, not on the town, but on the plaintiff, and no reason was suggested to us why the plaintiff was not competent to assume it by its own voluntary act. Nor can we see why it should be beyond the scope of the contractual powers of the town, after it had provided for all its own uses, as a public corporation and administering a public trust, to take within its benefits, without additional cost to it, another public corporation whose duties and responsibilities so vitally concern its own growth, good order and even existence. If the plaintiff consented and agreed to it for the consideration furnished at the time by the town, what could vitiate this benefit? Regardless of how this might be determined in an action between other parties, we do not think the plaintiff ought to be permitted to recover as upon a quantummeruit for water already furnished under its stipulation for free water. When the ordinance of the town was accepted by the plaintiff, the execution of the contract was complete; by it valuable rights were granted the plaintiff and important duties imposed. An acceptance of those rights is an assumption of those duties. As it is a contract which binds the town not to interfere with those rights, so likewise it is one which binds the plaintiff to the discharge of those duties. R. R. v. R. R., 47 Fed., 21. The public schools and the churches of the town of Henderson are beneficiaries, by express words, under the contract, entitled to free water, and they have such interest in the contract as entitles them to maintain an action for a violation of it, injurious to them. Jones v.Water Co., 135 N.C. 553, and cases cited.
But the plaintiff complains that the town of Henderson furnished the consideration which supports the contract, and that the town could not legally do this for the public schools and churches. How can the plaintiff complain of this? It was entirely competent for it to make this stipulation, unless by its performance it entirely disabled itself to perform its duties to the town. It is in receipt of the consideration from the town, in the enjoyment of the benefits of the contract supported by it. The plaintiff is not the proper party to complain, (178) *Page 174 
in the absence of proof that it has thereby disabled itself to perform its public duties. In Waterworks v. School District,23 Mo. App. 227, and 48 Fed., 523, cited by the able counsel of the plaintiff, the State and Federal courts differed as to the interpretation of the words, "public buildings," used in a contract between the plaintiff and the authorities of Kansas City, obliging the plaintiff to furnish, free of charge, water "for all public buildings and offices of the city," the Federal Court holding that these words embraced public school buildings in the city, and the State Court holdingContra. In those cases the school buildings and the school system were under the control of a different corporation, and the school district was not coterminus with the city limits. In Water Supply Co. v.Albuquerque, 9 New Mexico, 441, the plaintiff agreed to furnish 12,000,000 gallons of water to the defendant for "city purposes," and it was held that the supply of water to the public schools of the city, being under the control and management of a distinct and different corporation, was not a "city purpose," within the meaning of the contract, and that action related to future, not past, performance. In the present case the words "public schools" do not admit of any misconception. The plaintiff further contends that the present public schools were not in contemplation of the parties at the time the contract was entered into, and invokes this principle of construction, thus formulated in Smith v. Kerr,108 N.Y. 31; 2 Am. St., 362: "In construing contracts, the court should put itself, as near as may be, in the situation of the parties, and, from a consideration of the surrounding circumstances and the occasion and the apparent object of the parties, determine the meaning and intent of the language used by them in their agreement." At the time the contract was made, the public schools in the town of Henderson were not under the control of the town or maintained by it; they are not now so, and never have been. At that time they were, as now, under the control and management of a separate and distinct body. It does not appear that the town, by its corporate limits, was a distinct and separate public school district; that there were, as now, public schools in the corporate limits of the town. There were then, as now, churches in the town of Henderson, and these the town could not in any way control or manage. It is true the public school buildings were then constructed of wood; they are now structures of brick, larger and more commodious. The parties were entering into contract to continue forty years; and while its purposes were fixed, it was contemplated that conditions would change; that the town would increase in population, as it has done; that the number of consumers and the amount of water consumed would increase; that new streets would be opened and old streets extended; that, as the town grew, the number of children would increase, and that there would be greater demand for water for those *Page 175 
purposes for which plaintiff stipulated it would furnish free water. The larger the town became, the more valuable became the franchise granted to the plaintiff by the town. The contract provides not only that the town may demand of plaintiff an increase of its pipe lines, but that the plaintiff may voluntarily extend them. The growth of the town in the forty years of life of the contract, and the enlargement and extension of plaintiff's system, entered largely into the contemplation of the parties, and probably controlled and determined the action of each. Shall the plaintiff be permitted to avoid the duties of its contract because a measure of the contemplated growth has been attained? The fact that the defendant — a separate and distinct corporate body — controls the "public schools," and not the governing authorities of the town, is not decisive of the question; this was the fact at the date of the contract. That this fact was not intended by the parties to be decisive will further appear by reading the entire clause in the contract: "Also for churches, public schools, town offices, market houses for city use, and all other town
offices, now in use or to be erected." It will be noted the word town, orcity, is used to designate the other buildings coming in the free class, but it is not used for the churches or public schools.
In our opinion, the plaintiff was required by its contract to furnish free of charge, for the time sued for, to the public schools located within the corporate limits of the town of Henderson, and, having performed this obligation, it cannot recover the value of the water so furnished. The fact that other children than those that live in the city limits are permitted to attend these schools we do not think should relieve the plaintiff of its obligation. The power of the Legislature to permit this was known, or ought to have been known, to the plaintiff, and it could by proper words in the contract have restricted and limited its duty and obligation. The schools are public; they are within the corporate limits. The Legislature has been proper to entrust their management to the defendant, a corporate body, separate and distinct from the town of Henderson, and extended the territorial area of its control. It has located six public schools in the area beyond the corporate limits, which do not demand free water and are not beneficiaries of the contract, and it has located two schools in the town limits; these schools are open to the children who live in the town and to some others living (180) beyond the town limits. A very large majority of the children attending these two schools live within the town limits. This stipulation, while imposing upon the plaintiff the duty to furnish water free of charge, for drinking purposes, for toilet and water-closets in the school buildings, does not, of course, require of the plaintiff to furnish water for sprinkling lawns, yards, play grounds or for bath rooms or bathing pools, but only for the necessary purposes stated above. We are therefore *Page 176 
of the opinion that the plaintiff has nothing to justify complain of in his Honor's judgment. In plaintiff's appeal we find
No error.
BETWEEN THE SAME PARTIES.
DEFENDANTS' APPEAL.